UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEORGE LENIART,                    :
                Plaintiff,         :
                                   :
        v.                         :        Case No. 3:09-cv-9 (CFD)
                                   :
SGT. WILLIAM BUNDY, et al.,        :
                Defendants.        :

**RULING ON DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT [Dkt. #55]**

In this civil rights action under 42 U.S.C. §1983, the plaintiff George Leniart

("Leniart") alleges that the defendants conducted warrantless searches of his

residence, unlawfully arrested him and detained him in connection with two separate

incidents.  The defendants in the amended complaint are Sergeant William Bundy and

Detectives Wilber Blanchette, Michael Hoagland and John Patterson of the Connecticut

State Police, and State of Connecticut Parole Supervisor Ellison and Parole Officers

Larry Bransford, Blais and Jose Cartegena.[1]  The defendants have filed a motion for

summary judgment.  For the reasons that follow, the defendants' motion is granted in

part.

I.      **Standard of Review**

        In a motion for summary judgment, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

therefore entitled to judgment as a matter of law.  *See* Rule 56(a), Fed. R. Civ. P.;

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party may

_____

        [1]  Detective Marty Graham was included in the original complaint but omitted
from the amended complaint.  All claims against Detective Graham are considered
withdrawn.

satisfy this burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment.  *Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  *Patterson v. County of Oneida, NY*, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  However, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff].'"  *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson*, 477 U.S. at 252).

II.    **Facts**[2]

On June 11, 2002, Leniart was sentenced to a term of imprisonment of four

years followed by six years of "special parole" on a State of Connecticut conviction for

risk of injury to a child, and a term of imprisonment of four years on a conviction for

sexual assault in the second degree.  On January 11, 2006, Leniart completed his term

of imprisonment.  He was released from custody to begin serving his special parole, a

six-year period of mandatory supervision by the Connecticut Board of Pardons and

Paroles and its parole officers.  The parole conditions included no contact with minors

and no consumption of alcoholic beverages.

On October 3, 2006, Leniart's former mother-in-law contacted the Connecticut

State Police and stated that her granddaughter, Brandi Leniart ("Brandi"), was being

assaulted by her father, George Leniart.  Officers from the Town of Montville Police

Department went to Leniart's home and interviewed Brandi and others.  No arrest was

made at that time.  The next day, however, Leniart's ex-wife Vicky contacted defendant

State Trooper Patterson and told him about a recent incident between her daughter

Brandi and Leniart.  Vicky Leniart stated that she wished to come to the barracks to

make a statement but had no transportation.  Defendant Patterson referred the matter

to defendant State Police Detective Hoagland and had no further involvement in the

case.

Detective Hoagland brought Vicky Leniart, Brandi and Brandi's cousin Corey

Piascik to the state police barracks.  Brandi provided defendant Detective Hoagland

---

[2]  The facts are taken from the parties' Local Rule 56(a) Statements and
attached exhibits.  They are undisputed unless otherwise indicated.

with a signed written statement stating that she frequently observed her father getting drunk, and that the previous evening, Leniart assaulted and threatened Brandi when she told him that she was going back to live with her mother.  Leniart pushed Brandi down three times and threw a full can of beer at her, hitting her in the head.  Corey Piascik corroborated Brandi's statements regarding Leniart's violent behavior, and also stated that Leniart stored marijuana in an opening in the basement ceiling at his home. Piascik also stated that Leniart had threatened them into telling a false story to the police the previous day.[3]

Based on the witness statements of October 4, defendant Hoagland completed an affidavit for an application for an arrest warrant for Leniart.  Connecticut Superior Court Judge Fischer issued the warrant.  Defendant Bransford, Leniart's parole officer, was notified of the warrant and discussed the case with his supervisor.  His supervisor authorized Bransford to remand Leniart back into custody once he was arrested on the warrant.[4]  Defendant Bransford asked to accompany the state police when they served the arrest warrant and sought assistance from them as "back-up" to execute the remand to custody order.

On October 5, 2006, Detectives Hoagland and Blanchette and parole officers Duca and Bransford went to Leniart's home.  Leniart was arrested based on the

---

[3]  Leniart denies the contents of the statements and has provided an affidavit from Brandi stating that she did not make those statements on October 4, and that defendant Hoagland had Brandi and Corey sign blank witness statements.  Leniart has not provided an affidavit from Corey Piascik.

[4]  Conn. Gen. Stat. §54-127 authorizes parole officers, under certain conditions, to place parolees into custody.

warrant.  A search of Leniart's residence revealed a bag of what appeared to be marijuana in the basement ceiling where Corey Piascik said it would be found.  Leniart was brought to the state police barracks for processing.  He was then returned to Department of Correction ("DOC") custody for violating the conditions of his special parole following his arrest on charges of assault in the second degree, breach of peace and distributing alcohol to a minor.  Defendant Ellison was not involved in Leniart's supervision at this time.

Leniart was arraigned on the state charges of assaulting his daughter, breach of peace and delivery of liquor to a minor.  After defendant Bransford advised him of his rights, Leniart waived his right to a preliminary probable cause hearing on the remand to custody order.

On November 2, 2006, the Connecticut Board of Pardons and Paroles ("the Board") issued a warrant for Leniart's reimprisonment.  On January 26, 2007, the original criminal charges were dismissed but Leniart remained in custody pursuant to the remand to custody order and warrant of reimprisonment for parole violation.

Although field tests on the seized marijuana were negative, laboratory tests determined that the substance located in the basement ceiling was marijuana.  On March 7, 2007, Leniart was charged with possession of marijuana.  On March 22, 2007, he pled guilty and received a sentence of ninety days, execution suspended, on the marijuana charge.  Leniart remained in custody pursuant to the remand to custody order and warrant of reimprisonment for parole violation.

On May 22, 2007, the hearing examiner for the Board found Leniart in violation of his special parole and recommended that parole be revoked and that Leniart be

reparoled on July 5, 2007.  The Board accepted the recommendation.  On July 5, 2007, Leniart was released from custody and resumed special parole supervision.  The Board imposed additional conditions of GPS monitoring and no contact with Brandi Leniart without the parole officer's permission.  Leniart also signed a "Computer Use Agreement," agreeing to use a computer only for authorized legitimate purposes, allow parole officers to search his computer, not access any website with or possess sexually graphic materials,  not participate in internet bulletin boards or chat rooms, and keep a log of all email and internet use.[5]

Defendant Ellison was defendant Bransford's supervisor during Leniart's second period of special parole.  Defendant Ellison was not aware of any of Leniart's activities in violation of his new parole term until September 25, 2007, when the Connecticut State Police contacted the Special Management Unit ("SMU") of the Board, where Ellison worked.  The State Police then provided detailed written statements by "V1," a victim of sexual assault by Leniart.   Based on the information provided by the Connecticut State Police, the SMU determined that Leniart should be remanded into custody that day.

A subsequent review of Leniart's GPS monitoring device showed numerous violations, including being more than sixty feet away from the monitoring device.  The monitoring reports also showed Leniart driving at 89 miles per hour.[6]

---

[5]  Leniart states that he signed only the first page of the Computer Use Agreement and denies that the signature and initials on the second page are his.  He has provided no evidence to support this assertion.

[6]  Leniart contends in his opposition to summary judgment that the GPS device was malfunctioning.

On September 25, 2007, the SMU staff requested assistance from the Connecticut State Police to remand Leniart into custody for the new violation. Defendants Ellison, Bransford, Cartegena and Blais along with Connecticut State Police defendants Bundy, Hoagland and Blanchette went to Leniart's home.  When Leniart did not answer the door, parole officers contacted the GPS monitoring company and learned that the GPS device indicated that Leniart was in the home.  While forming a perimeter to prevent Leniart from leaving, defendant Cartegena found Leniart hiding behind a stone wall beyond the perimeter location.  Leniart was handcuffed without incident.  A search of Leniart's person produced two cell phones, a wallet and a set of keys.  He did not have the GPS monitoring device as required under the GPS condition of his parole.

Defendant Ellison states that Leniart identified the proper house key and gave him permission to enter the residence to retrieve the GPS device, Leniart's laptop computer and any electronic storage devices.[7]  The defendants seized the GPS device, laptop computer, VCR surveillance tapes and a micro-cassette recorder.

Leniart was taken to the State Police barracks for questioning and then returned to DOC on a remand to actual custody order for violating conditions of his special parole.  Leniart first requested, and then waived, a preliminary probable cause hearing.

On November 20, 2007, the Board issued a new warrant for reimprisonment.  On December 11, 2007, Leniart was charged with sexual assault in the second degree, sale of liquor to a minor and sale of controlled substances in connection with his

---

[7]  Leniart contends that he did not grant anyone permission to enter the residence.

7

conduct concerning V1.  An addendum to the warrant for reimprisonment was served on Leniart on December 21, 2007, based on the new charges.  Leniart also was charged with violating the Computer Use Agreement when files of adult sexual erotica were found on his computer.  He waived a preliminary probable cause hearing on this charge and asked that the final parole revocation hearing be continued until after disposition of the criminal charges.

On April 1, 2008, Leniart was charged in an unrelated case with murder of a victim of kidnapping, murder of a victim of sexual assault and murder of a victim under sixteen years of age.  Those charges related to incidents in 1996.  On May 19, 2009, the December 2007 charges were nolled.  However, Leniart remained in custody on the murder charges.  In June 2010, Leniart was sentenced to life without the possibility of release following conviction on the charges relating to the 1996 homicide.

III.    **Discussion**

In this lawsuit, Leniart has various claims concerning the 2006 and 2007 parole violations, their related arrests and searches.  The defendants move for summary judgment on four grounds:  (1) the existence of probable cause defeats Leniart's claims for false arrest and malicious prosecution; (2) as an inmate on special parole, Leniart had no legitimate expectation of privacy and all searches were lawful; (3) any excessive force claim is conclusory and must be dismissed; and (4) the defendants are entitled to qualified immunity.

A.    **Probable Cause**

Leniart first challenges his arrests as lacking probable cause.  If Leniart's arrests

8

were supported by probable cause, his claims for false arrest and malicious prosecution necessarily fail.  *See Bonide Prods., Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000) ("To prove a § 1983 or state law claim of malicious prosecution, [a plaintiff] must establish [inter alia] ... that there was no probable cause for the criminal proceeding; ..."); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (quotation marks and citation omitted)); *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985) ("It is abundantly clear that a finding of probable cause will defeat state tort claims for false arrest, false imprisonment and malicious prosecution.").

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).  "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest," *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006), *i.e.*, it is an objective, not subjective, test.  *Id*. at 154.  The evidence required to establish probable cause to arrest is less than the level of evidence required to convict. Thus, the fact that an arrestee was later acquitted of the crime for which he was arrested does not indicate that probable cause was lacking at the time of arrest. *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989).

An arrest made pursuant to a warrant issued by a neutral judge carries a presumption that probable cause existed for the arrest.  To overcome this presumption, Leniart must demonstrate that the affiant "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause,'" a heavy burden. *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

To evaluate this claim, the court considers the arrest warrant application without the allegedly false information and determines whether the corrected application supports a finding of probable cause.  If the court concludes that probable cause is established on the corrected warrant application, no Fourth Amendment violation has occurred.  *See Defelice v. Ingrassia*, 201 F. Supp. 2d 88, 92 (D. Conn. 2002) (citing *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993), *aff'd*, 2003 WL 1970490 (2d Cir. Apr. 28, 2003).

It is "well-established" that statements of a victim and eye-witnesses to an alleged crime constitute probable cause unless there are reasons to doubt the veracity of such sources.  *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).  Probable cause is not vitiated because the officer did not investigate the arrestee's claim of innocence.  *See id.* at 395-96.  Indeed, once the officer has probable cause for an arrest, he "is neither required nor allowed to continue investigating, sifting and weighing information."  *Id.* at 398; *see also Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003)(noting that the Second Circuit does not "impose a duty on the arresting officer to

investigate exculpatory defenses offered by the person being arrested").

### 1.    October 2006 Arrest

The October 2006 arrest warrant affidavit was based on statements provided by
Brandi Leniart and Corey Piascik.  Leniart has provided an affidavit from Brandi Leniart
stating that she did not make the statements included in the warrant affidavit, that both
she and Corey Piascik told defendant Hoagland that Leniart was not the person who
provided alcohol to Corey, and that defendant Hoagland had both of them sign blank
witness forms which he later completed.  Brandi's affidavit creates a genuine issue of
material fact regarding whether defendant Hoagland intentionally made a false
statement in the arrest warrant affidavit.  Absent the two witness statements, the arrest
warrant application lacks probable cause.  Accordingly, the defendants' motion for
summary judgment is denied as to claims for false arrest against defendant Hoagland
regarding the October 2006 arrest.

Defendant Patterson had limited involvement in the incidents underlying this
series of events.  He took the initial call from Vicky Leniart and referred the matter to
defendant Hoagland.  Defendant Patterson states in his affidavit that he had no other
involvement in the incidents underlying this action.  Leniart has provided no evidence in
opposition to the motion for summary judgment showing any further involvement by
defendant Patterson.  The court can discern no constitutional violation in referring a
complaint to another officer.  Accordingly, the defendants' motion for summary
judgment is granted as to all claims against defendant Patterson.

Defendant Bransford was presented with an arrest warrant signed by a state
court judge.  In reliance on the warrant, defendant Bransford consulted his supervisor

11

and concluded that Leniart should be remanded to custody for violation of the conditions of his special parole, one of which was to "obey all laws."  Leniart has provided no evidence suggesting that defendant Bransford, the only parole officer involved in this claim, was aware of any facts questioning the validity of the warrant. The court concludes that the decision to remand Leniart to custody in October 2006, was reasonable and can discern no constitutional violation.  The defendants' motion for summary judgment is granted as to any claims against defendant Bransford resulting from Leniart's remand to custody.  Defendants Ellison, Cartegena and Blais were not involved in the October 2006 arrest and remand to custody.  The motion for summary judgment is granted in their favor on this claim as well.

Defendants Bundy and Blanchette participated in the arrest.  Leniart has provided no evidence demonstrating that either defendant was aware of the allegedly false information in the arrest warrant affidavit.  Absent such evidence, Leniart has not demonstrated any constitutional violation by either defendant Bundy or Blanchette. The defendants' motion for summary judgment is granted as to defendants Bundy and Blanchette on the false arrest and malicious prosecution claims relating to the October 2006 arrest.

### 2.   March 2007 Arrest

In March 2007, Leniart was arrested for possession of marijuana after laboratory tests identified the material seized in the October 2006 search.  Leniart notes that field tests on the material were negative and argues that the sample was contaminated before the laboratory test.  However, the defendants are not required to investigate further in the face of trustworthy laboratory evidence showing  the violation of the law.

Leniart's suspicions do not negate probable cause to arrest Leniart based on the test results. The defendants' motion for summary judgment is granted as to all claims relating to the March 2007 arrest for possession of marijuana.

### 3.    September 2007 Remand to Custody

In September 2007, the Connecticut State Police gave the SMU copies of two statements. The first was a statement given by a minor victim of sexual assault "V1," provided to police in Deposit, New York. The victim stated that Leniart had provided him alcohol and had sexually assaulted him when Leniart was on special parole. The second was a statement from Leniart's son Doug, confirming the pattern of activity in the victim's statement. In light of this information defendant Ellison approved a remand to actual custody. In opposition to the motion for summary judgment, Leniart has provided a statement from his son Doug indicating that Doug provided false information to police to benefit himself. There is no evidence, however, that any parole officer was aware of that information at the time they provided Doug's statement to SMU.

The evidence that Leniart had violated conditions of his special parole provides probable cause for the remand to custody order. The defendants' motion for summary judgment is granted as to all claims relating to probable cause for Leniart's return to custody in September 2007.

### 4.    December 2007 Arrest

Defendant Hoagland prepared the arrest warrant affidavit based on statements taken by Hoagland in November 2007 from the victim. Leniart has provided an unsworn statement from the victim, Doc. #86-1 at 78-79, stating that Hoagland coerced

13

him into making the false statements in November 2007.  Defendant Hoagland did not

refer in the arrest warrant affidavit to the statement the victim gave to New York police

officers or to Doug Leniart's confirmation of the pattern of activity.

The defendants argue that the court should not consider this statement because,

as an unsworn statement, it is not admissible and, therefore, not proper evidence in

opposition to the motion for summary judgment.  Regardless of whether the court

considers the statement, Leniart's claim regarding the December 2007 arrest fails.

A plaintiff does not have a claim for false arrest or malicious prosecution under

section 1983 if, at the time of his arrest and prosecution, he already is in custody on

other charges, because there is no deprivation of liberty interests.  *See Dillhunt v.*

*Theriault*, No. 9:07-CV-412(GTS/DEP), 2009 WL 4985477, at *16 (N.D.N.Y. Dec. 15,

2009) ("Where a prisoner's period of incarceration is not impacted by disciplinary

proceedings ... that inmate has no claim for malicious prosecution under section 1983");

*Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, at *13-*14 (S.D.N.Y. Mar. 31,

2006) ("[a]n inmate already  incarcerated has not suffered any unconstitutional

deprivation of liberty as a result of being charged with new criminal offenses").  Leniart

was in custody pursuant to the remand order.  He has not shown that his period of

incarceration was lengthened as a result of this arrest.  Thus, the defendants' motion

for summary judgment is granted as to all claims relating to the December 2007 arrest.

**B.**   **Searches**

The defendants contend that, as an inmate on special parole, Leniart had no

legitimate expectation of privacy in his residence and was subject to searches by parole

officers.  In addition, they argue that the 2006 search was incident to a valid arrest. Leniart argues that the search was conducted by a state police officer, not a parole officer and has challenged the validity of the arrest warrant.

Fourth Amendment protections against unreasonable search and seizure extend only to unreasonable government intrusions into legitimate expectations of privacy.  By virtue of their status, parolees have diminished expectations of privacy.  In addition, if a parolee has been charged with violating conditions of his parole and a warrant for his reimprisonment has been issued, the parolee's expectations of privacy are further reduced.  *United States v. Julius*, 610 F.3d 60, 65  (2d Cir. 2010) (citations omitted).

When a parole officer learns of the possibility that a parolee has violated the conditions of his parole, the parole officer has a duty to investigate.  *See United States v. Reyes*, 283 F.3d 446, 459 (2d Cir.) (citing *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 368 (1998)), *cert. denied*, 537 U.S. 822 (2002); *United States v. Thomas*, 729 F.2d 120, 124 (2d Cir.) (stating that parole officer had a duty "to investigate further to determine whether [the parolee] was being rehabilitated or was violating the conditions of his parole"), *cert. denied*, 469 U.S. 846 (1984).  To determine whether the conduct of a parole officer was rationally and reasonably related to the performance of the parole officer's duty, the court should examine the circumstances involved.  The court should note that "the duties and objectives of probation/parole officers and other law enforcement officials, although distinct, may frequently be 'intertwined' and responsibly require coordinated efforts."  *U.S. v. Newton*, 369 F.3d 659, 667 (2d Cir.), *cert. denied*, 543 U.S. 947 (2004).

15

The privacy restrictions on parolees, which would be unconstitutional if applied to the general public, are "meant to assure that the [parole] serves as a period of genuine rehabilitation and that the community is not harmed by the [parolee's] being at large." *Griffin v. Wisconsin*, 483 U.S. 868, 875 (2002); *see also United States v. Massey*, 461 F.3d 177, 179-80 (2d Cir. 2006) (parolee's reasonable expectation of privacy less than that of ordinary citizen), *cert. denied*, 549 U.S. 1136 (2007); *United States v. Grimes*, 225 F.3d 254, 258 (2d Cir. 2000) (parole justifies some departure from traditional Fourth Amendment standards).  Thus, "information provided by a police officer, whether or not on the basis of firsthand knowledge," that the parolee may have violated a condition of his parole can be a reasonable basis for a parole officer's search of a parolee. *Id.* at 879-80 (permitting probation agency to search, especially for drugs or illegal weapons, on a lesser degree of certainty that otherwise required by the Fourth Amendment); *see also Reyes*, 283 F.3d at 463 ("it is difficult to imagine a situation where a probation officer conducting a home visit in conjunction with law enforcement officers, based on a tip that the probation officer has no reason to believe conveys intentionally false information about a supervisee's illegal activities, would not be pursuing legitimate supervised release objectives.").  Thus, the fact that parole officers were accompanied by the Connecticut State Police does not, in and of itself, render their actions unconstitutional.

Courts are divided on whether police officers may search a parolee's residence absent specific parole conditions permitting a warrantless search.  *Compare United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007) (holding that warrantless search

by police officers was unreasonable where parole agreement authorized only parole officers to conduct search without warrant); *United States v. Lopez*, 474 F.3d 1208, 1214 (9th Cir.) (reasoning that police officers may search parolee's residence or person without a warrant if parole conditions so specify), *cert. denied*, 550 U.S. 928 (2007); and *United States v. Carnes*, 309 F.3d 950, 962-63 (6th Cir. 2002) (holding that warrantless search by parole and police officers was unreasonable where neither parole agreement nor state regulation authorized searches without warrant), *cert. denied*, 537 U.S. 1240 (2003); *with United States v. Yuknavich*, 419 F.3d 1302, 1310-11 (11th Cir. 2005) (holding that, in absence of probation condition authorizing searches generally, warrantless search of computer by probation officers was a reasonable means of enforcing specific condition restricting Internet usage), and *United States v. Keith*, 375 F.3d 346, 350 (5th Cir.) (concluding that warrantless search by probation and police officers was reasonable despite lack of probation condition or state regulation authorizing such searches because "the needs of the probation system outweigh the privacy rights of the probationers generally"), *cert. denied*, 543 U.S. 950 (2004).

Leniart's parole conditions provided that his parole officer could visit his residence at reasonable times, but did not mention warrantless searches by parole officers or searches by police. Home visits are less invasive forms of supervision than searches and are not subject to the reasonable suspicion standard. *See Reyes*, 283 F.3d at 462.

17

1. **October 2006 Search**

The defendants argue that the actions of the state police defendants were lawful as a search incident to a valid arrest.  As discussed above, there is an issue of fact whether defendant Hoagland falsified the arrest warrant affidavit.  Even if the arrest warrant were valid, there is a question regarding the scope of the search.  The Supreme Court has held that the permissible scope of a search incident to an arrest in a dwelling is limited to the arrestee's person and the area within his "immediate control," which is defined as "the area from within which he might gain possession of a weapon or destructible evidence."  *Chimel v. California*, 395 U.S. 752, 763 (1969).  Leniart has presented evidence of the extent of the search.  Leniart's mother has provided an affidavit stating that a detective used a chair to search in the rafters for the marijuana and that the search was conducted by the police, not the parole officer.  In addition, Leniart has provided evidence that defendant Hoagland searched and photographed Leniart's bedroom which was separated from the room in which he was arrested by a closed door.  This evidence creates a genuine issue of material fact whether the involvement of the Connecticut State Police defendants exceeded the permissible scope of a warrantless search incident to arrest.  *See id.* at 762-63 (there is no justification for routinely searching any room other than the room in which an arrest occurs or searching concealed areas within that room).  Thus, the defendants' motion for summary judgment is denied on the ground that the October 2006 search was a valid search incident to arrest.

Parole officers were given a signed arrest warrant on October 5, 2006.  The warrant indicated that Leniart was not obeying all laws, a condition of his special parole.

Thus, a home visit to Leniart's residence by a parole officer was "rationally and reasonably related to the performance of the parole officer's duty," which includes the duty to protect the public from the commission of further crimes. *United States v. Newton*, 369 F.3d 659, 665–66 (2d Cir.), *cert. denied*, 543 U.S. 947 (2004).  Unlike the Second Circuit cases addressing this issue, Leniart did not consent to warrantless searches of his residence as a condition of his special parole and the defendants have identified no Connecticut regulation authorizing warrantless searches.  *See, e.g., Newton*, 369 F.3d at 666 (noting that New York regulations and conditions of parole signed by parolee demonstrated consent to warrantless search and that parolee did not challenge parole officers entitlement to conduct warrantless search of his residence).

The mere presence of Connecticut state police detectives at the search does not render the search unreasonable.  Leniart has presented evidence of the extent of the search.  Officers conducting a home visit are entitled to seize contraband in plain view. *Reyes*, 283 F.3d at 468.  Leniart has presented evidence that officers had to stand on a chair to retrieve the marijuana from the ceiling rafters.  Parole Officer Duca states that he reached up and retrieved the package.  The court concludes that there is a genuine issue of material fact whether the marijuana was in plain view.

Leniart also argues that defendant Bransford was acting as a "stalking horse" to enable the Connecticut State Police to evade the protections of the Fourth Amendment. The Second Circuit has held, however, that the stalking horse theory is not a valid defense in this circuit. *Reyes*, 283 F.3d at 463.  Although Leniart's stalking horse theory fails, the court concludes that the evidence presented in opposition to the motion for

summary judgment creates an issue of fact whether the actions of the defendants constituted a home visit or more intrusive search and whether the marijuana was properly seized if the defendants were conducting a home visit.   The defendants' motion for summary judgment is denied with regard to the claims against defendants Bransford, Hoagland, Blanchette and Bundy regarding the 2006 search.

### 2. <u>September 2007 Search</u>

In September 2007, the SMU was again presented with evidence that Leniart had violated conditions of his special parole by having contact with a minor, drinking and providing alcohol to the minor.  Again, a home visit to Leniart's residence by a parole officer was rationally and reasonably related to the performance of the parole officer's duty.  Leniart argues that he did not consent to the search and did not identify to defendant Ellison the key to his residence.  By the conditions of his special parole, however, Leniart consented to home visits at any reasonable times.  The home visit was not unreasonable because parole officers were accompanied by state police detectives.

Leniart was not in the residence at the time of the search.  He states, and the defendants do not disagree, that the defendant Ellison seized the GPS device, his laptop computer, electronic storage devices, VCR surveillance tapes and a micro-cassette recorder.  There is no evidence supporting a conclusion that these items are contraband.  *See, e.g., United States v. Massey*, 03 Cr. 938(WHP), 2004 WL 1243531, at *4 (S.D.N.Y. Jan. 21, 2004) ("It is well established that parole officers are entitled to seize contraband in plain view during a home visit." (citing *Reyes*, 283 F.3d at 468)). The defendants' motion for summary judgment is denied as to the claims against

20

defendant Ellison regarding the September 2007 search.

**C.**   **Qualified Immunity**

Government officials performing discretionary functions are protected from liability for civil damages unless their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have been aware.  *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009).  The constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," although the exact issue need not have been previously decided.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  To establish a defense of qualified immunity, the defendant must establish that his acts did not violate a constitutional right or, if a violation was shown, that the right was not clearly established at the time of the incident.  *Pearson*, 129 U.S. at 816.

It would be objectively unreasonable for defendant Hoagland to believe he had probable cause to arrest Leniart if he fabricated the evidence in the arrest warrant affidavit.  *See Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998).  In addition, there are genuine issues of fact whether the actions of defendants Bransford, Hoagland, Blanchette and Bundy constituted a home visit or more intrusive search and whether the items seized in October 2006 were in plain view.  Also there is a question of fact whether the items seized in September 2007 were contraband.  Thus, the genuine issue of material fact that precluded entry of summary judgment also precluded a determination at this time that defendant Hoagland is protected by qualified immunity regarding the 2006 arrest, that defendants Bransford, Hoagland, Blanchette and Bundy

are protected by qualified immunity on the claim regarding the 2006 search and that defendant Ellison is protected by qualified immunity regarding the 2007 search.

### D.   **Excessive Force**

In his original and amended complaints, Leniart stated that he sought damages for use of excessive force in his prayer for relief but included no allegations suggesting that excessive force was used against him by any defendant.  To assert a claim, Leniart was required to allege sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  Although detailed allegations are not required, conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Leniart was proceeding *pro se.*  Although the court liberally construes *pro se* pleadings and hold *pro se* litigants to less stringent standards than lawyers, this does not excuse Leniart from alleging facts to support his claim.  *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Leniart sought leave to file a supplemental complaint to add an unrelated claim. The court denied leave because Leniart waited over one year to seek leave to add the new claim and did not explain why he waited to do so.  The court also noted that discovery was closed and reopening discovery to litigate this new claim would unduly delay resolution of this case.  Leniart also sought leave, after the defendants filed their motion for summary judgment, to file a second amended complaint to add Parole Officer Duca and include allegations of excessive force occurring on October 5, 2006.

The court denied leave because the claims sought to be added were time-barred and the amendment would not relate back to the filing of the action.  *See* Doc. #60.  Leniart states that there is a pending motion for reconsideration of that decision, but a review of the docket shows no pending motion for reconsideration.

The court has previously denied leave to file a second amended complaint and will not revisit that decision.  In addition, in his Local Rule 56(a)2 Statement, Leniart admits that he was handcuffed without incident on September 25, 2007.  *See* Doc. #86-4, ¶ 125.  Absent any allegations of use of excessive force, the defendants' motion for summary judgment is granted as to the excessive force claim.

**IV.**  <u>**Conclusion**</u>

Defendants' motion for summary judgment [**Dkt. #55**] is **GRANTED in part**.  The motion is granted as to all claims except the claims for false arrest in October 2006 against defendant Hoagland, the claims regarding the October 2006 search against defendants Bransford, Hoagland, Blanchette and Bundy and the claims regarding the 2007 search regarding defendant Ellison.

The Clerk is directed to terminate Detective Patterson and Parole Officers Blais and Cartegena as defendants in this case.

**SO ORDERED.**

Dated at Hartford, Connecticut, this 26th day of September, 2011**.**

/s/ Christopher F. Droney
Christopher F. Droney
United States District Judge

23