**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GEORGE M. LENIART, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 3:09-cv-09 (HBF) |
| | : | |
| v. | : | |
| | : | |
| WILLIAM BUNDY, ET AL. | : | February 25, 2013 |
| | : | |
| Defendants. | : | |
| _____ | : | |

**PLAINTIFF'S COMBINED MOTIONS IN LIMINE**

Plaintiff George M. Leniart moves the Court in limine as follows:

**1.    Testimony by witnesses with respect to facts outside their personal knowledge should be excluded.**

The Court should exclude testimony by witnesses with respect to facts outside their personal knowledge.  Federal Rule of Evidence 602 provides in pertinent part that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fact witnesses should not be asked about the events in this case, namely, Mr. Leniart's unlawful arrest and the subsequent unlawful search of his home in 2006 and the unlawful search of Mr. Lenart's home in 2007, unless they have personal knowledge of these events.

**2.    Expert testimony should be excluded.**

With regard to expert testimony, Federal Rule of Civil Procedure 26(a)(2)(A) requires a party to federal civil litigation to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  As for retained outside experts, as well as in-house experts "whose duties as the party's employee regularly involve giving expert testimony," this disclosure must be accompanied by a written report containing

"(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B).  As for all other experts, the disclosure must state "(i) the subject matter on which the witness is expected to present evidence . . . and (ii) a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).

These disclosures must be made "(i) at least 90 days before the date set for trial or for the case to be ready for trial; or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure."  Fed. R. Civ. P. 26(a)(2)(D).

Here, defendants have made no such expert disclosures under Rule 26, let alone before the required deadline (here, by no later than January 2, 2013).  Therefore, defendants should not be permitted to introduce any expert testimony during the trial.

Nonetheless, defendants have disclosed on their witness list Mr. Gregory Kettering, whom defense counsel has held out as a handwriting expert from the Forensic Science Laboratory of the State of Connecticut, Department of Public Safety.  Given that Mr. Kettering is a state employee whose duties regularly involve giving expert testimony, *see e.g., State v. Mack*, 129 Conn. App. 127, 140 (2011) (describing Mr. Kettering as "the state's expert handwriting witness"); *Mateczko v. Fernino*, No. AAN-CV-07-55003714S (Conn. Super. Ct. 2010) (Superior Court filing disclosing Mr. Kettering as "part of the Forensic Science Laboratory of the State of

Connecticut, Department of Public Safety," and as a "criminalist[] and document examiner[]"
having "expertise and experience based upon [his] training and education in analyzing writing
samples and signatures."), attached as Exhibit A; Tina A. Brown, *Letter Describes Woman's
Killing*, HARTFORD COURANT, June 7, 2007, attached as Exhibit B ("Greg Kettering, a
handwriting expert from the state forensic laboratory, testified that the handwriting in the note
was consistent with known samples of Ashby's handwriting with the exception of the letter 'e'"),
defendants were required to provide a disclosure meeting the requirements of Rule 26(a)(2)(B)
and (D).  They failed to do so, and Mr. Kettering should not be allowed to testify as an expert.[1]

Based on conferral with defense counsel, plaintiff anticipates that defendants will contend
that this Court's Final Pre-Trial Order permitted them to delay providing the requisite expert
disclosures until "five (5) days prior to the pretrial conference," to be held on March 7, 2013.
Final Pre-Trial Oder, dated October 12, 2012, at ¶ 7.  This reading of the Court's order is
erroneous for two reasons.  First, the Pre-Trial Order itself contemplates that the parties have
made the proper Rule 26 disclosure, and, quite obviously, does not purport to preempt the
Federal Rules of Civil Procedure with regard to expert witness disclosures.  *See* Final Pre-Trial
Order, at ¶ 7 ("A copy of the Rule 26 disclosure for any expert expected to testify at trial shall be
provided with the pretrial compliance.").  Second, defendants' reading of this Court's order flies
in the face of the purpose and intent of the Federal Rules themselves.  Indeed, the purpose of
Rule 26 disclosures is to minimize unfair surprise and to allow all parties to adequately prepare
their case for trial, including retaining their own expert witnesses, deposing opposition experts,
and conducting adequate discovery.  To permit defendants to circumvent the requirements of

---

[1] Moreover, the identification of Mr. Kettering on defendants' January 28, 2013 witness list (ECF Doc. 146) does
not describe or even state that Mr. Kettering has any personal knowledge of the facts and circumstances at issue in
this case.  Therefore, Mr. Kettering should be precluded even to the extent that defendants are holding him out as a
fact, as well as expert, witness.

Rule 26 allowing them to disclose an expert witness at this late stage would be highly prejudicial to plaintiff's case.  This is especially true in a case such as this, where the defendants have had notice of plaintiff's intent to challenge the validity of certain documents since plaintiff's original complaint, filed over four years ago on January 5, 2009.  See Original Complaint, dated January 5, 2009 (Doc. No. 1), at ¶¶ F5-6.  Defendants have had ample opportunity to disclose this and any other expert witnesses, and should be precluded from doing so now, at the eleventh hour.

**3.**    **All evidence of parole violations and proceedings relating to the events of October 2006 should be excluded from the jury's consideration.**

As will be seen, the facts of this case, reflected in defendants' own admissions, establish as a matter of law that the events of October 2006 involved a custodial arrest carried out by the Connecticut State Police and a corresponding search incident to that arrest – not a parole home visit.  Thus, as set forth below, plaintiff moves to exclude all documents and evidence, including Defense Exhibits 502, 503, 504, 518, 519, 520, 521, and 522 and any testimonial evidence, regarding any parole violations and proceedings relating to the October 2006 events.

**a. Evidence of parole violations and proceedings is irrelevant and immaterial to the jury's inquiry.**

The record in this case establishes that, on October 5, 2006, Detective Michael Hoagland completed an affidavit for an application for an arrest warrant for plaintiff.  Defendants' Motion for Summary Judgment, dated November 23, 2010, at 4; Plt. Exh. 16/Def. Exh. 509, attached as Exhibit C (Application for Arrest Warrant).  On this same day, Detective Hoagland presented this application to a prosecutor in the Superior Court and to Judge Fisher, who issued the warrant.  Def. Mot. for SJ, at 4-5.  Defendants themselves contend that this was a valid arrest warrant, and that, once Detective Hoagland obtained it, he set out to arrest plaintiff on the authority of this warrant.  Def. Mot. for SJ, at 5.  Parole officers were notified only after the

warrant had issued, and indicated that they were authorized to issue a remand "in the event that the CSP arrested plaintiff." *Id.*

Upon defendants' arrival at plaintiff's home in October of 2006, they quickly placed plaintiff under arrest "based on the strength of the valid, lawful arrest warrant issued by the Superior Court." Affidavit of Sgt. Blanchette in Support of Summary Judgment Doc. No. 63-4, at ¶ 3. Thereafter, Parole Officer John Duca "conducted a limited 'wingspan' search, incident to lawful arrest." *Id.*[2] However, rather than restricting himself to searching plaintiff's person and area of immediate control, Officer Duca used a chair to reach the rafters of plaintiff's basement, where he reached into the space over plaintiff's bedroom, and located a plastic bag. *See id.* As this search was occurring in the main room of the basement, officers entered plaintiff's bedroom and searched under his bed, pulling out drawers under the bed and photographing a wooden box containing jewelry that was located there. *See* Plt. Exh 22, 35 MM Photography Report, dated December 21, 2006, attached as Exhibit D (recording two photographs of "a wooden box asserted containing jewelry located under the bed."); Plt. Exh. 24 A and B/Def. Exh. 571 and 572, attached as Exhibit E (Photographs of wooden box).

These actions constituted a search, not a visit. *See U.S. v. Newton*, 181 F. Supp. 2d 157, 161 (E.D.N.Y. 2002) ("There is a 'common sense' distinction between visits and searches: searches are 'an intrusive, probing endeavor,' while home visits are 'much more restricted in scope.'") (*citing Diaz v. Ward*, 506 F. Supp. 226, 228 (S.D.N.Y. 1980)). Indeed, in his summary judgment opinion in this matter, Judge Droney highlighted the critical distinction between an intrusive search and a home visit, noting that "[h]ome visits are less invasive forms of

---

[2] Plaintiff contends that the officer conducting the search in the rafters of his basement was Officer Bundy, not Duca. However, the analysis of the propriety of the search is unchanged by whether law enforcement or parole officers conducted the search. Even if Officer Duca was the officer searching plaintiff's rafters, the search being undertaken was one incident to arrest, rather than a lawful home visit under plaintiff's parole conditions.

supervision than searches." Ruling on Defendants' Motion for Summary Judgment Doc. No. 92, dated September 26, 2011, at 17.

*U.S. v. Trzaska*, 866 F. Supp. 98, 100 (E.D.N.Y. 1994) highlights this point. There, Edward Trzaska, a parolee, was under the supervision of the Probation Department of the Eastern District of New York. *Id.* In May of 1993, his probation officer, Kelley O'Keefe, received information from a confidential source that the Trzaska was receiving shipments from weapon supply stores. *Id.* Her investigation confirmed this suspicion, and "[o]n September 25, 1993, Officer O'Keefe went to defendant's apartment to conduct a 'routine home contact.'" *Id.* While speaking to Trzaska in the doorway of his apartment, "Officer O'Keefe observed, under a table to her right, a jar filled with what appeared to be bullets. Officer Kelly, [another probation officer who accompanied Officer O'Keefe,] simultaneously observed, on top of a file cabinet, trays with shell casings and ammunition calibrators. They then exited the apartment without alerting [Trzaska] to what they had seen." *Id.* at 100-101 (internal citations omitted).

Instead of obtaining a search warrant, however, "[a]pproximately one hour later, O'Keefe and Kelly returned to the apartment accompanied by four New York City Police Officers, who were brought along 'for backup.'" *Id.* at 101.

> Officers O'Keefe and Kelly then proceeded to conduct what they termed a 'plain view search' of the premises. That is, instead of 'open[ing] drawers, look[ing] under things, push[ing] up ceiling tiles, look[ing] in cabinets and closets and refrigerators,' the officers 'merely stood in the middle of the room and looked, and everything that was in plain view that was considered contraband was seized.' As a result of this search, a rifle, over 40 boxes and containers of ammunition, empty shell casings, and materials and instruments used to make ammunition, were seized.

*Id.* Trzaska moved to suppress evidence, arguing that the warrantless search was unconstitutional. *Id.* at 100. The government argued that, when "the Probation Officers arrived

at the defendant's apartment on September 25, they were acting pursuant to their 'inherent' authority to conduct 'home visits.'"   *Id.*

Citing approvingly the decision in *Diaz v. Ward*, 506 F. Supp. 226, 228-29 (S.D.N.Y. 1980), the court "described the proper scope" for a home visit as follows:

> In performing a home visit, a parole officer may properly be limited by the parolee to one room of the residence, where the parole officer, on the basis of his observation of the parolee and conversation with him, may gather the information necessary to achieve the visit's limited purposes.

*Trzaska*, 866 F. Supp. at 102.  Then, under the facts of the case, the court found that the officers had "forcibly entered the defendant's apartment, they conducted a far more extensive 'plain view' search of the premises and they seized items they saw without the defendant's consent," and concluded that it "was not a routine home visit."  *Id.* at 103.  Having made this finding, the court granted Trzaska's motion to suppress evidence seized as a result of the forcible warrantless search of his apartment.  *Id.* at 106.

The search in this case was even more extensive than in *Trzaska*.  Rather than conduct a limited "plain view" search of Mr. Leniart's basement, defendants conducted an extensive search in the rafters with the aid of a chair, and under his bed and inside drawers and a container therein.  This search clearly exceeded the limits of a home visit and has been held out by even the defendants as constituting a search incident to an arrest.

Moreover, after plaintiff's unlawful arrest and search, he was transported to Troop E, where he was processed.  Def. Mot. for SJ, at 5-6.  Only thereafter was plaintiff transferred to parole personnel, who transported him to Corrigan Correctional Center and then lodged a parole remand order.  Def. Mot. for SJ, at 6.

It is clear that the foregoing events in October 2006 involved an arrest pursuant to a law enforcement warrant, and that the jury in this case should be asked to determine whether this

warrant was supported by probable cause.  The only evidence relevant to this inquiry is evidence of Detective Hoagland's knowledge and conduct leading up to the completion of the Application for Arrest Warrant and the execution of the resulting warrant.  Information contained in testimony and exhibits such as Defense Exhibits 502 and 503, which outline the parole violations plaintiff was later charged with, and the subsequent findings of the Board of Parole, are irrelevant and immaterial to the jury's inquiry.

Similarly, with regard to the search, the jury should be asked to decide whether the officers' search of plaintiff's home was an appropriate search incident to arrest – i.e., properly "limited to [plaintiff's] person and the area within his 'immediate control,' which is defined as 'the area from within which he might gain possession of a weapon or destructible evidence.'" *Chimel v. California*, 395 U.S. 752, 763 (1969).  Testimonial and documentary evidence such as Defense Exhibits 504 and 518-522, which discuss plaintiff's subsequent detainment for, charge of, and plea to possession of marijuana, does not bear on whether the underlying, preceding search was constitutional.  Consequently, all evidence regarding plaintiff's alleged parole violations and proceedings concerning the October 2006 events should be excluded as irrelevant and immaterial.

**b. Evidence of parole violations and proceedings will confuse and mislead the jury.**

It is axiomatic that the parole and pardons system in Connecticut is separate and apart from the underlying penal system.  The goal of the parole and pardons system is to successfully rehabilitate and reintegrate offenders into the community.  To this end, parolees are supervised by parole officers as they reintegrate into the community, and must adhere to conditions governing relevant aspects of their release from prison, ranging from their employment to their

housing and interpersonal relationships.  Failures to adhere to these conditions may result in an offender's parole being revoked and their being remanded to custody.

The standard under which parole violations and revocations are judged is vastly different from the standard used to adjudicate any underlying offenses.  For example, although a criminal charge or arrest may trigger parole violation proceedings, such proceedings will judge the parolee's conduct using a much lower standard of proof than the criminal court adjudicating the underlying offense.  Thus, while a parolee may ultimately be acquitted of the criminal charge, or the court may dismiss those charges, the suspicion, arrest, and charging of that offense alone may nonetheless serve as a basis revoking parole.  Consequently, the fact that parole has been revoked, or that the parolee has been subject to parole violation proceedings quite obviously does not mean that he is guilty of the underlying offense.  Indeed, parolees may be subject to violation proceedings without having broken any substantive penal laws.

Despite this important distinction, a lay juror, when presented with evidence of parole proceedings or revocations, may erroneously assume that an adverse outcome in the parole setting necessarily means that the plaintiff was guilty of the underlying offense, or that the allegations in the underlying criminal case were somehow validated by the parole decision.  Such inferences would impinge on the jury's factfinding functions and seriously prejudice Mr. Leniart's particular case, especially given the lack of any evidentiary value of such parole evidence to the case.

### c.  Evidentiary objections to specific exhibits.[3]

For the reasons outlined above, and the additional reasons discussed below, plaintiff objects to admission of the following specific exhibits:

---

[3] Copies of exhibits for which plaintiff has an objection are attached to Plaintiff's Objections to Defendants' Proposed Exhibits.

### (i) Plaintiff Objects to Defense Exhibits 502 Under Rules 402, 403, and 802.

Defendants intend to offer into evidence a Parole Violation Report, dated October 11, 2006. Def. Exh. 502. For the reasons discussed above, Plaintiff objects to this exhibit on the basis that it is irrelevant and immaterial under Rule 402, and unduly prejudicial, confusing, and misleading under Rule 403.

Additionally, this exhibit contains extensive hearsay, as the details of the relevant parole violation allegations are not within the author's, Parole Officer Bransford, personal knowledge. These details were relayed to Mr. Bransford by Connecticut State Police. As hearsay, this document must be excluded unless defendants can show that it qualifies under an exception or exclusion to the rule against hearsay, which they cannot.

First, as Parole Officer Bransford has no personal knowledge of the events described in this exhibit, his statements do not qualify as a recorded recollection. See Fed. R. Evid. 803(5) (stating that a recorded recollection must be "on a matter the witness once knew about," and must "accurately reflect[] the witness's knowledge."). Second, one of plaintiff's primary contentions in this case is that Detective Hoagland (the Connecticut State Police officer who is the original source of the "Violation Details" outlined in this report) knowingly and maliciously fabricated the witness statements and affidavits that served as the bases for plaintiff's arrest and this Parole Violation Report. As such, the credibility and trustworthiness of Detective Hoagland's statements and, in turn, this report are in serious question in this case, and the report thus cannot qualify as a public record. *See* Fed. R. Evid. 803(8) (requiring that "neither the source of information nor other circumstances indicate a lack of trustworthiness").

### (ii) Plaintiff Objects to Defense Exhibit 503 Under Rules 402 and 403.

Defendants intend to offer into evidence a summary of the Board of Parole's findings and conclusions, dated May 22, 2007. Def. Exh. 503. For the reasons discussed above, Plaintiff objects to this exhibit on the basis that it is irrelevant and immaterial under Rule 402, and unduly prejudicial, confusing, and misleading under Rule 403.

### (iii) Plaintiff Objects to Defense Exhibit 518 Under Rules 402 and 403.

Defendants intend to offer into evidence an Application for Arrest Warrant regarding plaintiff's arrest for a charge of alleged possession of the marijuana seized in the October 2006 search of his home. This Application is dated January 2, 2007, three months after the incident at issue in this case. Def. Exh. 518. For the reasons discussed above, Plaintiff objects to this exhibit on the basis that it is irrelevant and immaterial under Rule 402, and unduly prejudicial, confusing, and misleading under Rule 403.

### (iv) Plaintiff Objects to Defense Exhibit 519 Under Rules 402 and 403.

Defendants intend to offer into evidence a photograph of certain "green leafy plant-like material" seized from plaintiff's home during the October 2006 search. Def. Exh. 519. For the reasons discussed above, Plaintiff objects to this exhibit on the basis that it is irrelevant and immaterial under Rule 402, and unduly prejudicial, confusing, and misleading under Rule 403.

Specifically, this photograph is irrelevant and immaterial to the jury's determination of whether the search that yielded this substance was lawful, and the image is potentially prejudicial to plaintiff's case.

### (v) Plaintiff Objects to Defense Exhibit 520 Under Rules 402 and 403.

Defendants intend to offer into evidence a Laboratory-Controlled Substance Report, dated December 18, 2006. Def. Exh. 520. For the reasons discussed above, Plaintiff objects to

this exhibit on the basis that it is irrelevant and immaterial under Rule 402, and unduly prejudicial, confusing, and misleading under Rule 403.

Specifically, this report purports to establish that the substance found and seized as a result of the unlawful search of plaintiff's home on October 5, 2006 was indeed marijuana. For the reasons discussed above, this evidence is irrelevant and immaterial to the jury's determination of whether the search that yielded this substance was lawful, and is prejudicial to plaintiff's case.

### (vi) Plaintiff Objects to Defense Exhibit 521 Under Rules 402 and 403.

Defendants intend to offer into evidence an Inventory of Property Seized without a Search Warrant, dated October 5, 2006, and a Request for Examination of Physical Evidence, dated October 5, 2006. Def. Exh. 521. For the reasons discussed above, Plaintiff objects to this exhibit on the basis that it is irrelevant and immaterial under Rule 402, and unduly prejudicial, confusing, and misleading under Rule 403.

Specifically, these documents purport to show that the bag of green plant-like material taken from plaintiff's home was believed to be marijuana. For the reasons discussed above, this evidence is irrelevant and immaterial to the jury's determination of whether the search that yielded this substance was lawful, and is prejudicial to plaintiff's case.

### (vii) Plaintiff Objects to Defense Exhibits 504 and 522 Under Rules 402 and 403.

Defendants intend to offer into evidence two exhibits containing Mr. Leniart's March 22, 2007 conviction for possession of marijuana. Def. Exhs. 504 and 522. For the reasons discussed above, Plaintiff objects to this exhibit on the basis that it is irrelevant and immaterial under Rule 402, and unduly prejudicial, confusing, and misleading under Rule 403.

Additionally, this conviction does not comply with the requirements of Rules 609 and 803(22) for admissibility as impeachment evidence and as an exception to the hearsay rule, as it is not a conviction punishable by death or imprisonment for more than one year.

**4.      Plaintiff's prior convictions must be excluded.**

It is plaintiff's understanding that defendants intend to offer into evidence three sets of felony convictions: (1) capital felony murder (2010), (2) sexual assault in the second degree and risk of injury to a minor (1997), and (3) risk of injury to a minor (2002). All of these convictions must be excluded from the jury's consideration, including for purposes of impeachment under Federal Rule 609.

Pursuant to Rule 609, a witness' character for truthfulness may be impeached by evidence of a criminal conviction "for a crime that, in the convicting jurisdiction, was punishable by death or imprisonment for more than one year." Fed. R. Evid. 609(a)(1). However, "District courts under Rule 609(a)(1) are to consider the relative probative worth of a witness's specific offenses of conviction . . . in light of the factors listed under Rule 403, when determining whether to admit evidence of those convictions for impeachment purposes." *U.S. v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005). Thus, the admission of prior convictions is subject to Rule 403, *see* Fed. R. Evid. 609 (a)(1)(A), which permits the "exclusion of relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. In this case, none of plaintiff's convictions are relevant for credibility purposes. Moreover, even if these convictions were deemed to be relevant for credibility, their potential for undue prejudice to plaintiff substantially outweighs any such relevance.

First, plaintiff's convictions are of little impeachment value in this case. The federal courts have long recognized a distinction in Rule 609 analysis, between crimes that reflect adversely on a witness' integrity, and acts of violence, which have little or no bearing on

veracity. *Gordon v. U.S.*, 383 F.2d 936, 940 (D.C. Cir. 1967), *cited approvingly by U.S. v. Estrada*, 430 F.3d 606, 617-618 (2d Cir. 2005). All of plaintiff's convictions are with respect to assaultive crimes or crimes of violence, rather than crimes bringing into question plaintiff's veracity or deceitfulness. Thus, these convictions will do little to aid the jury in evaluating plaintiff's credibility. On the other hand, weighed against this limited probative value is the prejudicial impact of admitting these convictions.

Convictions for murder and sexual assault are among the most prejudicial convictions that a witness could face. In fact, "[a] murder conviction . . . has the potential to do more than create a credibility handicap. It has the potential to so prejudice the jury that its weighing of all the factual issues in the entire case may be impaired." *Tabron v. Grace*, 898 F. Supp. 293, 296 (M.D. Pa. 1995). For their part, "rape and sexual assault convictions are among the most prejudicial types of information the jury could learn about the plaintiff in a civil suit." *Scott v. Lawrence*, 36 F.3d 871, 874 (9th Cir. 1994).

Given the extreme prejudice inherent in the admission of these convictions, there is a serious risk that rather than taking these convictions as evidence regarding plaintiff's credibility, the jury will take these convictions as evidence regarding plaintiff's character, in violation of Rule 404 against character evidence. This is a harm that a limiting instruction will not cure, for "[i]f an instruction limiting consideration of the conviction to the issue of credibility always sufficed to insure requisite fairness, there would be no need to make the [Rule 403] balance mandated by Rule 609(a)." *U.S. v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).

For these reasons, plaintiff moves to exclude all evidence of his prior convictions. Moreover, in the alternative, plaintiff moves that the defendants not make any references to the name and nature of those convictions, and, instead, that the jury be informed only of the fact that

Mr. Leniart previously has been convicted of felonies. This is an alternative that has been embraced by courts in this circuit.[4] *See Twitty v. Ashcroft*, No. 3:04cv410 (DFM), 2010 WL 1677757, at *3 (D. Conn. 2010), attached as Exhibit F, (finding that "the probative value of the name and nature of the convictions is substantially outweighed by the danger of unfair prejudice. Accordingly, evidence as to the date of the plaintiff's two felony convictions and the sentence is admissible; the names of the convictions are not."); *U.S. v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) ("In the Second Circuit, it is within the discretion of the district courts to further limit the evidence of the prior conviction to exclude the nature or statutory name of the offense."); *U.S. v. Joe*, No. 07 Cr. 734(JFK), 2008 WL 2810169, at *4 (S.D.N.Y. July 21, 2008), attached as Exhibit G, (Government restricted to inquiring about date of prior conviction and sentence imposed and precluded from inquiry into the statutory name of the offense or the facts underlying the conviction because "this detail poses a danger of unfair prejudice").

Moreover, defendants intend to offer into evidence several mittimuses reflecting plaintiff's prior convictions. *See* Defense Exhibits 535, 542, 543, 544, 545, 546, and 556. For the reasons discussed above, Plaintiff objects to these exhibits on the basis that they are improper and unduly prejudicial under Rules 609 and 403. Finally, defendants intend to offer into evidence an Application for Arrest Warrant, dated December 4, 2007, Def. Exh. 540, which in part, details plaintiff's prior convictions. For the reasons cited above, plaintiff wishes to object to the admission of this exhibit.

---

[4] Plaintiff is aware of *Martino v. Korch*, 131 F. Supp. 2d 313, 315 (D. Conn. 2000), where this Court ruled on a motion in limine regarding Rule 609 and prior convictions. In *Martino*, the relevant conviction were for (1) witness tampering, a crime involving dishonesty or false statements, (2) stalking, and (3) interfering with an officer. *Id.* at 314-315. The convictions at issue here, however, are vastly more prejudicial than those in *Martino*, and plaintiff believes that in this case, in the alternative to complete exclusion, the jury should be limited to knowing only of the fact that Mr. Leniart previously has been convicted of felonies.

**5.    The search of plaintiff's home in September 2007 was per se unreasonable.**

Mr. Leniart was released to Special Parole on July 5, 2007, after serving a full four year sentence for a June 2002 conviction for risk of injury to a child, and after being in custody as a result of the October 2006 arrest and search of his home.  In Connecticut, at the time of Mr. Leniart's release, there existed no directives or regulations authorizing warrantless parole searches.  Instead, his conditions upon release included a provision authorizing his parole officer to *visit* his home at any reasonable time, but did not include any provision authorizing his parole officer to *search* his home, upon reasonable suspicion or otherwise.  A blanket consent authorizing suspicionless and warrantless searches was not instituted until 2008, well after the events at issue in this case.  Therefore, it is clear that Mr. Leniart had not consented to the warrantless search of his home, nor did Connecticut have a rule or regulation authorizing such a search that would comply with the requirements of the Fourth Amendment.

**a.   Plaintiff had an expectation of privacy in his home.**

During the summary judgment briefing, Defendant Ellison contended that ample federal authority exists for the proposition that parolees have no expectation of privacy.  On the contrary, the key federal authority on this issue supports Mr. Leniart's position that, under the circumstances of this case, parole officers had no authority to conduct a warrantless search of his home.

In *Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987), Joseph Griffin was on probation from a conviction for resisting arrest, disorderly conduct, and obstructing an officer.  *Id*. at 870.  At that time, the Wisconsin State Department of Health and Social Services, the department with legal custody of probationers, had a codified regulation permitting "any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband-including any item that the

probationer cannot possess under the probation conditions." *Id.* In the context of this regulation, parole officer Michael Lew "received information from a detective on the Beloit Police Department that there were or might be guns in Griffin's apartment." Id. at 871. In response, "Lew, accompanied by another probation officer and three plainclothes policemen, went to the apartment. When Griffin answered the door, Lew told him who they were and informed him that they were going to search his home." *Id.* The resulting search yielded a handgun. *Id.* The Supreme Court held that the search in Griffin's home satisfied the demands of the Fourth Amendment, but it did so because it specifically was "carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." *Id.* at 873.

In *U.S. v. Knights*, 534 U.S. 112, 119-120 (2001), respondent Mark Knights was sentenced to summary probation for a drug offense. *Knights*, 534 U.S. at 114. As part of his probation order, Knights agreed to "[s]ubmit his ... person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.* (internal quotations omitted). Thereafter, as part of an investigation into certain acts of vandalism and arson, a sheriff's department detective observed various incriminating objects inside the truck of an individual who had been a guest in Knight's apartment that same night. *Id.* at 115. The detective observed a Molotov cocktail, explosive materials, a gasoline tank, and two locks that fit the description of the locks at the vandalized location. *Id.* After seeing these objects, the detective conducted a search of Knights' apartment, being aware that Knight was subject to a search condition as part of his probation. *Id.* The search yielded a detonation cord, ammunition, liquid chemicals, and other incriminating items. *Id.* In examining the reasonableness of the

search, the court assessed "on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which [a search] is needed for the promotion of legitimate governmental interests." *Id.* at 118-119. The court found that "Knights' status as a probationer *subject to a search condition* informs both sides of that balance," *id.* at 119 (emphasis added), and concluded "that the search of [Knights' apartment] was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances' with the probation search condition being a salient circumstance." *Id.* at 118 (internal citations omitted).

In *Samson v. California*, 547 U.S. 843, 857 (2006), petitioner Donald Samson, who was state parole in California, was walking down the street with a woman and a child. *Samson*, 547 U.S. at 846. Based on prior contact with Samson, knowing that he was on parole, and thinking that Samson was facing an at-large warrant, a police officer stopped Samson and asked him whether he had any outstanding warrants. *Id.* Samson responded that he was under no warrants and that he was in good standing with parole, facts which the police officer confirmed by radio dispatch. *Id.* Nonetheless, the police officer, based solely on Samson's status as a parolee, searched Samson and found a plastic bag containing methamphetamine. *Id.* at 846-847. Samson was charged with possession of methamphetamine. *Id.* at 847. At trial, the court denied Samson's motion to suppress. *Id.*

On appeal, the Supreme Court examined whether "a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a supicionless search by a law enforcement officer would not offend the Fourth Amendment." *Id.* at 847. The court utilized *Knights'* balancing test, and did so lending great weight to the fact that as part of his conditions of parole, Samson had consented to a state mandated search provision "to be subject

to search and seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Id.* at 846. Thus, as compared to the government's need, Samson's expectation of privacy was diminished by his having consented to the search in question. In other words, the court included the broad, express search condition to which the parolee had consented in its examination of the parolee's expectation of privacy:

> [A]s we found 'salient' in *Knights* with respect to the probation search condition, the parole search condition under California law—requiring inmates who opt for parole to submit to suspicionless searches by a parole officer or other peace officer 'at any time,' . . . was 'clearly expressed' to petitioner. He signed an order submitting to the condition and thus was 'unambiguously' aware of it. In *Knights*, we found that acceptance of a clear and unambiguous search condition 'significantly diminished Knights' reasonable expectation of privacy.

*Id.* at 852 (citing *Knights*, 534 U.S. at 119-20).

Here, not only did plaintiff not consent to warrantless or suspicionless searches of his home in his conditions of parole, but Connecticut did not have a regulation or administrative directive otherwise authorizing such searches.[5] Thus, plaintiff's expectation of privacy, when compared to Samson's or Knights' is exceedingly less "diminished."

**b. Parole officers had no authority to conduct a warrantless search of plaintiff's home.**

As the above authority makes clear, Mr. Leniart's status as a parolee does not in itself justify warrantless searches of his home. Instead, while his expectation of privacy may be less than an ordinary citizen's due to parole conditions he signed allowing home visits from his parole officer, plaintiff retains all of his Fourth Amendment protections that are not expressly

---

[5] Indeed, it is telling that, only well after the searches in this case took place, and after the *Samson* case, effective June 30, 2009, the Connecticut Department of Correction instituted a new Administrative Directive, which authorized "compliance searches," defined as "[a] periodic, random search, announced or unannounced, with or without reasonable suspicion, to monitor compliance with parole or community supervision conditions." Administrative Directive 11.4, attached hereto as Exhibit H.

obviated by written conditions of parole or a statute or regulation: "The circumstances under which a probation officer (or parole officer) may forcibly enter the home of a parolee or probationer and make a warrantless search are limited to cases in which it has been authorized by a statute or a valid regulation of a parole board or where it has been expressly imposed as a condition of parole or probation by the judge who imposed the sentence." *U.S. v. Trzaska*, 866 F. Supp. 98, 103 (E.D.N.Y. 1994); *see also Griffin*, 483 U.S. at 880 ("The search of Griffin's residence was 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers.); *Knights*, 534 U.S. at 119-20 ("The probation condition . . . significantly diminished Knights' reasonable expectation of privacy."); *Samson*, 547 U.S. at 850 ("Examining the totality of the circumstances pertaining to petitioner's status as a parolee . . . *including the plain terms of the parole search condition*, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate.") (emphasis added).

Here, the warrantless search of Mr. Leniart's home was not authorized as a condition of his parole, nor did any state regulation or rule authorize the search. Moreover, the search of his home was not authorized by any recognized warrant exception. For example, the record reflects that he was apprehended outside his residence, and that at the time of his arrest, the house was locked and secured. As such, the warrantless search inside the house was not a limited search incident to arrest. Nor did plaintiff consent to that search.

Given that the search in question was not authorized by plaintiff's conditions of parole, or by any state rule or regulation, and that the search does not qualify under any of the warrant exceptions, it is clear that the September 2007 search of plaintiff's home was per se unreasonable without a valid search warrant.

### c. Evidentiary objections to specific exhibits.

Given that Defendant Ellison had no authority to search plaintiff's home without a valid search warrant, testimonial and documentary evidence concerning parole violation proceedings that took place after the 2007 search are irrelevant and immaterial to the jury's task of determining whether the search itself violated plaintiff's constitutional rights. Moreover, for the reasons discussed in Plaintiff's Motion in Limine No. 3, such material is also highly prejudicial and impermissible hearsay.

Also irrelevant and immaterial is the evidence Defendant Ellison intends to introduce regarding the allegations that served as the foundation for plaintiff's remand and arrest during this incident. It is clear from the above authority that Defendant Ellison's search of plaintiff's home was per se unreasonable, regardless of the allegations that may have triggered plaintiff's remand to custody. Thus, such evidence is irrelevant and immaterial to the jury's charge to determine whether the search itself was lawful. Moreover, the evidence itself, which contains graphic accounts of allegations of sexual assault, is highly prejudicial and would impair the jury's ability to fairly evaluate the issue of whether the search in question was lawful.

### (i) Plaintiff Objects to Defense Exhibits 525, 526, and 527 Under Rule 402, 403 and 802.

Defendant Ellison intends to offer into evidence a Parole Violation Report, dated September 28, 2007, Def. Exh. 525, a Parole Violation Report, dated October 29, 2007, Def. Exh. 526, and an addendum to a Parole Violation Report, dated December 21, 2007, Def. Exh. 527. For the reasons discussed above, Plaintiff objects to these exhibits on the basis that they are irrelevant and immaterial under Rule 402, and unduly prejudicial, confusing, and misleading under Rule 403. Moreover, for the reasons discussed in Plaintiff's Motion in Limine No. 3, such material is also highly prejudicial.

Additionally, these exhibits contain extensive hearsay, as the details of the relevant parole violation allegations are not within the author's personal knowledge.  These details were relayed to parole authorities by Connecticut State Police.  As hearsay, these documents must be excluded unless defendant Ellison can show that they qualify under an exception or exclusion to the rule against hearsay, which he cannot.  As the author of these documents has no personal knowledge of the events described in them, the reports do not qualify as recorded recollections.  See Fed. R. Evid. 803(5) (stating that a recorded recollection must be "on a matter the witness once knew about," and must "accurately reflect[] the witness's knowledge.").

**(ii) Plaintiff Objects to Defense Exhibits 537, 538, and 539 Under Rule 402, 403 and 802.**

Defendant Ellison intends to offer into evidence a written statement by Doug Leniart, dated July 20, 2007, Def. Exh. 537, a written statement by an unidentified witness, dated August 17, 2007, Def. Exh. 538, and a written statement by an unidentified witness, dated August 6, 2007, Def. Exh. 539.  For the reasons discussed above and in Plaintiff's Motion in Limine No. 4, material regarding alleged sexual assault and rape is highly prejudicial.  Thus, plaintiff objects to these exhibits on the basis of Rule 403.  Moreover, for the reasons discussed above, these exhibits are irrelevant and immaterial under Rule 402.

Additionally, these exhibits are plainly hearsay.  As hearsay, these documents must be excluded unless defendant Ellison can show that they qualify under an exception or exclusion to the rule against hearsay, which he has not done.

**(iii) Plaintiff Objects to Defense Exhibit 540 Under Rule 402, 403, 609, and 802.**

Defendant Ellison intends to offer into evidence an Application for Arrest Warrant, dated December 4, 2007.  Def. Exh. 540.  For the reasons discussed above, Plaintiff objects to this

exhibit on the basis that it is irrelevant and immaterial under Rule 402, and unduly prejudicial, confusing, and misleading under Rule 403.

Additionally, this exhibit contains extensive hearsay, as the details of the relevant allegations are not within the author, Detective Hoagland's, personal knowledge.  As hearsay, this document must be excluded unless defendant Ellison can show that it qualifies under an exception or exclusion to the rule against hearsay, which he has not shown.  As Detective Hoagland has no personal knowledge of the events described in this exhibit, his statements do not qualify as a recorded recollection.  See Fed. R. Evid. 803(5) (stating that a recorded recollection must be "on a matter the witness once knew about," and must "accurately reflect[] the witness's knowledge.").

Finally, this document contains an account of plaintiff's prior criminal convictions.  As discussed in plaintiff's Motion in Limine No. 4, plaintiff objects to this document on the basis that these convictions should be excluded from the jury's consideration.

PLAINTIFF,
GEORGE M. LENIART


By:    /s/ Carolina D. Ventura
          Kevin M. Smith (ct24774)
          Carolina D. Ventura (ct28780)
          Wiggin and Dana LLP
          One Century Tower
          265 Church Street
          PO Box 1832
          New Haven, CT 06508-1832
          E-Mail:  ksmith@wiggin.com
          E-Mail:  cventura@wiggin.com
          Tel.:  (203) 498-4304
          Fax: (203) 782-2889

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 22, 2013, a copy of the foregoing Plaintiff's Combined

Motions in Limine was served by electronic mail and regular mail on the following counsel of

record:

> Robert S. Dearington
> Steven R. Strom
> Assistant Attorneys General
> 110 Sherman St.
> Hartford, CT 06105
> Tel.: 860-808-5450
> Fax: 860-808-5591
> Email: robert.dearington@ct.gov
> Email: steven.strom@ct.gov

> /s/ Carolina D. Ventura
> Carolina D. Ventura (ct28780)
> Wiggin and Dana LLP
> One Century Tower
> 265 Church Street
> PO Box 1832
> New Haven, CT 06508-1832
> E-Mail: cventura@wiggin.com
> Tel.: (203) 498-4304
> Fax: (203) 782-2889

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 25, 2013, a copy of the foregoing Plaintiff's Combined Motions in Limine was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ Carolina D. Ventura
Carolina D. Ventura (ct28780)
Wiggin and Dana LLP
One Century Tower
265 Church Street
PO Box 1832
New Haven, CT 06508-1832
E-Mail:  cventura@wiggin.com
Tel.:  (203) 498-4304
Fax: (203) 782-2889

# Exhibit A

Westlaw.

2010 WL 2243049 (Conn.Super.)                                    Page 1

Superior Court of Connecticut,

J.D. of Ansonia/Milford at Milford.

New Haven County

Waldemar MATECZKO, et al,

v.

Victoria FERNINO.

No. AAN-CV-07-5003714S.

February 24, 2010.

Disclosure of Expert Witness

*Name And Address of Experts:*

The defendant hereby discloses Mr. Greg Kettering, Criminalist-Document Examiner and James Schreeter, Criminalist-Document Examiner, both of which were or are with the State of Connecticut, Department of Public Safety Division of Scientific Services, Forensic Science Laboratory, 278 Colony Street, Meriden, Connecticut, 06451.

*Field of Expertise and Subject Matter Upon Which Expert Is Expected To Testify:*

Mr. Kettering and Mr. Schreeter are part of the Forensic Science Laboratory of the State of Connecticut, Department of Public Safety. They are both criminalists and document examiners and have expertise and experience based upon their training and education in analyzing writing samples and signatures.

*Expert Opinion To Which Witness Is Expected To Testify:*

Mr. Kettering and Mr. Schreeter are expected to testify relative to analyzing the purported signatures of a one Anthony Santaneo located on a certificate of title to a 1999 Mitsubishi Galant, having vehicle identification

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

number 4A3AA46G7XE156303 and a State of Connecticut Motor Vehicle/Vessel Gift Declaration purportedly signed by Anthony Santaneo dated March 5, 2005 referring to a 1999 Mitsubishi Galant. In comparing that claimed signature to known signatures of Anthony Santaneo, the opinion is that as to the questioned documents, Anthony Santaneo cannot be identified as the author of the questioned signatures on the certificate of title relative to the 1999 Mitsubishi Galant and the State of Connecticut Motor Vehicle/Vessel Gift Declaration for the 1999 Mitsubishi Galant.

*Substance of the Grounds For Each Expert Opinion:*

The substance of the grounds is the comparison between documents in question and documents with known signatures of Anthony Santaneo.

The report from the Forensic Science Laboratory is attached hereto as Exhibit A. It is presumed that this report, as well as the documents identified therein were copied and provided to counsel for the plaintiffs during the criminal proceedings, in that the request for the Forensic Laboratory Report was made by Detective Michael Fusco of the Shelton Police Department which was the arresting agency for the plaintiffs. Accordingly, plaintiffs' counsel is well aware and has already been provided all documentation relative to the expert opinion and copies of the documents relied upon by Mr. Kettering and Mr. Schreeter.

THE DEFENDANT

BY:_

Kevin S. Coyne

Coyne, von Kuhn, Brady & Fries, LLC

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Date of Printing: Feb 18, 2013

**KEYCITE**

Waldemar MATECZKO, et al, v. Victoria FERNINO., **2010 WL 2243049 (Conn.Super., Feb 24, 2010)**

**(NO. AAN-CV-07-5003714S)**

No history cases/references were found for your request.

© 2013 Thomson Reuters. All rights reserved.

# Exhibit B

CLASSIFIED    JOBS    CARS    RENTALS    HOMES    OBITUARIES    ADVERTISE    E-COURANT    HOME DELIVERY

**HOME    NEWS    TOWNS    SPORTS    HUSKIES    ENTERTAINMENT    BUSINESS    LIFE    HEALTH    OPINION    VIDEO**

Weather    POLITICS    Traffic    Mobile    Newsletters    VIDEO    Lottery    CTnow    Coupons    Obituaries    Subscribe

Home → Collections → **Sexual Assault**

Ads By Google

**Public Arrest Records**
1) Search by First and Last Name 2) Instant, Accurate and Anonymous
InstantCheckmate.com

**Man Cheats Credit Score**
1 simple trick & my credit score jumped 217 pts. Banks hate this!
www.thecreditsolutionprogram.com

**Walk Where Jesus Walked**
Walking along the Sea of Galilee You 'll never be the same!
www.goisrael.com/bestdeals

# Letter Describes Woman's Killing

June 07, 2007 | By TINA A. BROWN; Courant Staff Writer

Recommend    0

0

Tweet        0

One month after Lazale Ashby went on trial for the gruesome slaying of Elizabeth Garcia, he wrote a note to a fellow inmate saying he used a bloody tank top to fatally strangle Garcia and got pleasure at the trial looking at the crime scene photographs.

``I did a good job on her," Ashby wrote in the letter, which was entered into evidence in Hartford Superior Court Wednesday.

Ads By Google

**Arrest Records: 2 Secrets**

1) Enter Name and State. 2) Access Full Background Checks Instantly.

InstantCheckmate.com

**Exercise Your Brain**

Games You Didn't Know Existed to Fight Brain Decline and Aging.

www.lumosity.com

Ashby, who could get the death penalty if convicted for the December 2002 rape and homicide, also told inmate Kenneth Pladsen Jr. that he wanted him to help set up the lead detective so the officer would look bad before the jury, Pladsen testified earlier this week.

But it was the letter that Pladsen gave to former Hartford Det. Andrew Weaver during the Memorial Day weekend that made some state investigators say Wednesday that Ashby had given the prosecutors ``a checkmate" in his trial.

The note said in part: "About seeing the crime scene pictures and being happy about my work and I did a good job on her."

The front of the note said: " ... I hid the knife [green] in the pantry and burned the handle so my print aren't on it. About how the police is stupid, because I used the bloody tank top on the floor to strangle her, and that's the murder weapon."

"Patience perceives genius," the back of the note said. ``You get comfortable you get killed."

Greg Kettering, a handwriting expert from the state forensic laboratory, testified that the handwriting in the note was consistent with known samples of Ashby's handwriting with the exception of the letter ``e."

Prosecutor John Fahey has presented evidence that Ashby's DNA was found under Garcia's fingernail clippings and on her body and that Ashby confessed to Weaver in September 2003.

He is accused of killing Garcia, a single mother, in her Zion Street apartment on Dec. 1 or 2, 2002. In addition to murder, he is charged with murder of a victim of sexual assault, murder of a victim of kidnapping, felony murder, first-degree sexual assault, first-degree burglary and three counts of first-degree kidnapping.

The jury heard details of the letter after Pladsen testified.

A convicted thief who attempted to murder a correction officer with a blade concealed in a toothbrush, Pladsen testified that he got to know Ashby during recreation time at Somers state prison and befriended him.

Pladsen, who suffers from several mental illnesses, told the jury he shared information about the Garcia slaying with Weaver, hoping the state would give him a concurrent sentence within one handed down on conviction in another state.

Pladsen said he asked Ashby to write down his thoughts because his mental illness prevented him from remembering details. Ashby complied, and on May 29 he slipped a note under Pladsen's cell door while on his way to the shower.

Ads By Google

**Just How Old is Your Body**

**Related Articles**

**Jury Advocates Death Penalty**
February 1, 2008

**Killer's Boast: I Did A Good Job**
June 28, 2007

**Miranda Jurors End Deliberations For Day**
April 21, 2011

**Jury Selection Begins In Murder Case Vs. City Man**
February 6, 2007

**Jury Sees Detective's Photos Of Crime Scene**
May 10, 2007

**Find More Stories About**

Sexual Assault

Crime Scene

Handwriting

Are you as young as you think? Take the RealAge Test!
www.RealAge.com

**Retire To Another Country**
Learn How to Get a Dual Citizenship And Retire Abroad! Free Report Here
www.Sovereign-Investor.com

Pladsen read the contents of the letter to Weaver over the telephone from the prison, Weaver and Pladsen said earlier during the trial.

Weaver testified on cross-examination Wednesday that the knife mentioned in the letter was collected at the crime scene as evidence. It was found in the pantry and appeared to be missing from a set in the kitchen.

Ashby told him in his confession that the knife had a black handle, not green as described in the note, Weaver said. Ashby told him that he took the knife with him, Weaver testified, but the note was correct when it said the knife was in the pantry.

The tank top was collected as evidence, Weaver said, but the medical examiner could not say for certain how Garcia was strangled. Weaver said Ashby told him that he used his hands to strangle Garcia.

Fahey finished his case Wednesday. Defense lawyers M. Fred DeCaprio and David Smith are expected to present Ashby's defense today. They are expected to call Pladsen to cross-examine him about the contents of the note.

Contact Tina A. Brown at tabrown@courant.com.

Ads By Google

**10 Stocks to Hold Forever**
Buy them, forget about them, and never sell them.
www.StreetAuthority.com

**Free Obituaries Search**
1) Type In Someone's Name 2) Find Their Obituary Instantly!
Obituaries.Archives.com

## Featured Articles



**TBL: How Much Does Permanent, Standby Generator Cost?**

**Wal-Mart To Open Food Market In West Hartford's Bishops Corner**



**Missing Norwich Boy And His Mother Found Safe In Maine**

MORE:

**28 Dead, Including 20 Children, After Shooting Rampage At Sandy Hook School In Newtown**

**Consumer Reports: Michelin And Continental Tires Top The Ratings**

**Consumer Reports: Getting The Best Deal On Cable Bundle**

**Two Found Dead In Meriden Of Apparent CO Poisoning**

**Virgin Mobile Offers Free Cellphones To Low-Income State Residents**

**Consumer Reports: Benjamin Moore Best Paint, Behr Best Value**



Index by Keyword  |  Index by Date  |  Privacy Policy  |  Terms of Service

Please note the green-tinted linked article text has been applied commercially without any involvement from our newsroom editors, reporters or any other editorial staff.

# Exhibit C

ARREST WARRANT APPLICATION
JD-CR-64b, Rev. 10-04
C.G.S. §54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

**PLAINTIFF'S EXHIBIT 16**

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.state.ct.us

Supporting Affidavits Sealed
☐ YES    ☐ NO

| AGENCY NAME | AGENCY NO. |
|---|---|
| CSP-EDMC E | |

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT (Town) | G.A. NO. |
|---|---|---|
| Leniart, George DOB 01-08-66 300 Massapeag Side Rd Montville, CT | Norwich | 21 |

## APPLICATION FOR ARRREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the:    ☐ AFFIDAVIT BELOW.    ☐ AFFIDAVIT(S) ATTACHED.

| DATE AND SIGNATURE | DATE 10-5-06 | SIGNED (Prosecuting Authority) | TYPE/PRINT NAME OF PROSECUTING AUTHORITY David Smtz |
|---|---|---|---|

## AFFIDAVIT

The undersigned affiant, being duly sworn, deposes and says:

1. That the Affiant, Trooper First Class Michael Hoagland, badge #647, is a sworn member of the Connecticut State Police, having been so employed, since August 28th, 1998. That Affiant Hoagland is currently assigned to the Eastern District Major Crime Squad Detective Unit at Troop E in Montville, Connecticut. That Affiant Hoagland has responsibilities to include, but not limited to, addressing complaints regarding criminal activity in accordance with Connecticut General Statutes and has investigated numerous cases as set fourth below. That Affiant Hoagland has also received formal training regarding the laws of arrest and laws pertaining to Search and Seizure from The Connecticut State Police Academy and has received specialized training in various areas of investigation. That during the course of Affiant Hoagland's career, Affiant Hoagland has conducted numerous investigations that have ultimately resulted in the arrest and conviction of the accused. That Affiant Hoagland presently holds the rank of Trooper First Class and at all pertinent times mentioned herein was acting in his official capacity as such. That the Affiant has personal knowledge of the facts and circumstances stated hereinafter as a result of the Affiant's own investigative efforts, as well as, the investigative efforts of fellow officers who have reported their findings to the Affiant.

2. That- On 10-03-06 at approximately 2134hrs Troop E personnel received a call from Lee Clarno of 12 Tramart Dr Montville. Clarno explained that her granddaughter, Brandi Leniart, had called her and stated that she was being assaulted by her father, George Leniart, at his home of 300 Massapeag Side Rd. Montville, CT. Officers from the Montville Police Department were dispatched to this address for the incident. Upon their arrival they met with and obtained information of the incident. Brandi Leniart and her cousin Corey Piascik explained that here was

| (This is page _1_ of a _7_ page Affidavit.) | | |
|---|---|---|
| DATE AND SIGNATURE | DATE 10-05-06 | SIGNED (Affiant) DET [  ] 647 |
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 10/5/06 | SIGNED (Judge/Clerk, Comm. Sup. Ct, Notary Pub.) |

## FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE AND SIGNATURE | SIGNED AT (City or Town) Norwich | ON (Date) 10-5-06 | SIGNED (Judge / Judge Trial Referee) | NAME OF JUDGE/JUDGE TRIAL REFEREE |
|---|---|---|---|---|

Connecticut State Police
Eastern District Major Crime Squad
DET./TPR. ROBINSON #903

ARREST WARRANT APPLICATION
JD-CR-64b, Rev. 10-04
• C.G.S. §54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.state.ct.us

| FOR COURT USE ONLY | |
|---|---|
| Supporting Affidavits Sealed | |
| ☐ YES | ☐ NO |

| AGENCY NAME | | AGENCY NO. |
|---|---|---|
| CSP-EDMC E | | |

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT (Town) | G.A. NO. |
|---|---|---|
| Leniart, George DOB 01-08-66 300 Massapeag Side Rd Montville, CT | Norwich | 21 |

APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the: ☐ AFFIDAVIT BELOW. ☐ AFFIDAVIT(S) ATTACHED.

| DATE AND SIGNATURE | DATE 10-5-06 | SIGNED (Prosecuting Authority) | TYPE/PRINT NAME OF PROSECUTING AUTHORITY David Smith |
|---|---|---|---|

AFFIDAVIT

The undersigned affiant, being duly sworn, deposes and says:

no problem. Both explained that earlier Brandi had gotten into an argument with her father because her boyfriend was drunk and wanted to drive home. Rather than let her boyfriend drive, George was driving him home at the time.

3. That- On 10-05-06 at 1315hrs I spoke with Sgt. Greenwood EC-31 with the Montville Police Department. Sgt Greenwood EC-31 informed me that he responded to the house with Sgt. Northrop EC-39 and Off. Sundman EC-42 for a reported disturbance. As they arrived at the residence they found it to be unsecured with the doors and windows wide open, all the lights on, and no one inside or around the area. As they were at the residence Brandi Leniart and Corey Piascik walked up the driveway. Both kids explained that there was no problem. Brandi had gotten into a verbal argument with her father George, who got upset because she was going to leave with her boyfriend who had been drinking. Brandi stated that the problem is resolved because George was driving her boyfriend home. All officers cleared the residence due to the fact the incident was not as reported according to Brandi and Corey's statements and well being.

4. That- On 10-04-06 at approximately 1100hrs Victoria Leniart, mother to Brandi Leniart, contacted Troop E dispatch. Victoria explained that she needed to speak to someone about the incident that occurred the night before involving her daughter. Victoria explained that both her daughter and nephew were very scared of George and that he threatened them making them lie to the police about the incident. Victoria stated that she was at work and as soon as she was off she would make arrangements to bring Brandi and Corey to the Troop.

| (This is page 2 of a 7 page Affidavit.) | | |
|---|---|---|
| DATE AND SIGNATURE | DATE 10-05-06 | SIGNED (Affiant) DET 647 |
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 10/5/06 | SIGNED (Judge/Clerk Comm. Supr. Ct., Notary Pub.) |

FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE AND SIGNATURE | SIGNED AT (City or Town) Norwich | ON (Date) 10-5-06 | SIGNED (Judge / Judge Trial Referee) | NAME OF JUDGE/JUDGE TRIAL REFEREE |
|---|---|---|---|---|

Connecticut State Police
Eastern District Major Crime Squad
DET./TPR. ROBINSON #903

ARREST WARRANT APPLICATION
JD-CR-64b-Rev. 10-04
C.G.S. §54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.state.ct.us

Supporting Affidavits Sealed
☐ YES   ☐ NO

| AGENCY NAME | | AGENCY NO. |
|---|---|---|
| CSP-EDMC E | | |

| NAME AND RESIDENCE *(Town)* OF ACCUSED | COURT TO BE HELD AT *(Town)* | G.A. NO. |
|---|---|---|
| Leniart, George DOB 01-08-66 300 Massapeag Side Rd Montville, CT | Norwich | 21 |

## APPLICATION FOR ARRREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the:   ☐ AFFIDAVIT BELOW.   ☐ AFFIDAVIT(S) ATTACHED.

| DATE AND SIGNATURE | DATE *10. Sub* | SIGNED *(Prosecuting Authority)* | TYPE/PRINT NAME OF PROSECUTING AUTHORITY David Sm. K |
|---|---|---|---|

## AFFIDAVIT

The undersigned affiant, being duly sworn, deposes and says:

5. That: Once at Troop E, I obtained a signed written statement from Brandi Lee Leniart DOB 07-18-90. Brandi stated that she has been in contact with her father George Leniart since her birthday last July. In August she had become mad with her mother due to the fact that her mothers boyfriend had moved into their house. Brandi called her father and told him what happened. George agreed to come and pick up Brandi and things were going well. George had offered Brandi to stay at the house at 300 Massapeag Side Rd. Montville. Brandi stayed over that night and since then has stayed over the house quite often. While staying over George's house she has observe him drink a lot. Mainly everyday as soon as he gets home from work. Brandi stated that she has not seen her father participate or deal with drugs to often. On one occasion Brandi recalls fishing with her father and one of his friends named Walter. Walter is a friend of George's that he did time with in prison and sees him quite often. While out on the boat with them she saw her father, George, take a hit off a joint, marijuana cigarette. That is the only time she recalled her father George doing drugs. Brandi stated that approximately three weeks ago Walter came over the house. Walter gave George a large zip lock baggie full of marijuana in front of her. Walter explained that he could not smoke anymore due to the fact that he had a probation appointment on Monday. Brandi stated that things have been fine up until last night. Brandi had made arrangements to go fishing with her father and cousin Corey Piascik. At approximately 6:30pm George and his friend Mike picked both of them up in his boat at the end of their street in Norwich. Both George and Mike were pretty drunk and had been drinking for a while. They had beers and a bottle of Jagermister in a cooler on the boat. They fished for a short amount of time and went back to George's house by

(This is page _5_ of a _7_ page Affidavit.)

| DATE AND SIGNATURE | DATE 10-05-06 | SIGNED *(Affiant)* DET 647 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON *(Date)* 10/5/06 | SIGNED *(Judge/Clerk, Comm. Sup. Ct., Notary Pub.)* |

## FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE AND SIGNATURE | SIGNED AT *(City or Town)* Norwich | ON *(Date)* 10-5-06 | SIGNED *(Judge/Judge Trial Referee)* | NAME OF JUDGE/JUDGE TRIAL REFEREE |
|---|---|---|---|---|

Connecticut State Police
Eastern District Major Crime Squad
DET./TPR. ROBINSON #903

ARREST WARRANT APPLICATION
JD-CR-64b, Rev. 10-04
C.G.S. §54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.state.ct.us

☐ FOR COURT USE ONLY
Supporting Affidavits Sealed
YES ☐   NO ☐

AGENCY NAME
CSP-EDMC E

AGENCY NO.

NAME AND RESIDENCE (Town) OF ACCUSED
Leniart, George DOB 01-08-66 300 Massapeag Side Rd, Montville, CT

COURT TO BE HELD AT (Town)
Norwich

G.A. NO.
21

### APPLICATION FOR ARRREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the:   ☐ AFFIDAVIT BELOW.   ☐ AFFIDAVIT(S) ATTACHED.

| DATE AND SIGNATURE | DATE 10-5-06 | SIGNED (Prosecuting Authority) | TYPE/PRINT NAME OF PROSECUTING AUTHORITY |
|---|---|---|---|

### AFFIDAVIT

The undersigned affiant, being duly sworn, deposes and says:

boat. When they arrived at the dock by the house a friend by the name of Corey Silvia was waiting for them. They all went up to the house and continued partying. While they were grilling the fish that they had caught, Mike gave Corey some black berry brandy. Corey only had a sip. After they were done eating George told Mike that it was time to call it a night. George then gave Mike some marijuana for himself and he left. After that Brandi told her father that she was going to go home to her mother's house that night. George stated "You're not going back there". Brandi then called her mother on the phone. While she was speaking to her mother George just stared at her. As she got off the phone George asked if she had something to say to him. Brandi explained that she was going home weather he liked it or not. She also stated that she would walk home if she had to. George became mad after that and told Brandi that he was washing his hands with her. He instructed her to go upstairs and get her stuff. As Brandi walked up stairs George came inside and locked the door. Brandi was upstairs and called her grandmother. As she was speaking to her grandmother she heard George coming up the stairs so she hung up the phone. As George came upstairs he demanded her cell phone back. George and Brandi then became involved in an argument. As Brandi attempted to leave the room George forcefully threw Brandi on the bed. This occurred approximately three more times as Brandi attempted to leave again. George then told Brandi that she was messing with the wrong person. Brandi stated that she did not care. At that point George really got mad and threw a full beer can at Brandi striking her in the upper rear area of her head causing a contusion. Brandi stated that the injury to her head was very painful. As Brandi started to cry and stated that it really hurt. As Brandi was crying George attempted to push the mirror over at which point Brandi said, "Let me out of the room". George was real mad, jumped up and kicked the ceiling light. As his foot came down it hit Brandi causing her to fall over. Brandi did not

(This is page  4  of a  7  page Affidavit.)

| DATE AND SIGNATURE | DATE 10-05-06 | SIGNED (Affiant) | 647 |
|---|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 10/5/06 | SIGNED (Judge/Clerk, Comm. Sup. Ct., Notary Pub.) | |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE AND SIGNATURE | SIGNED AT (City or Town) | ON (Date) 10-5-06 | SIGNED (Judge / Judge Trial Referee) | NAME OF JUDGE/JUDGE TRIAL REFEREE |
|---|---|---|---|---|

Connecticut State Police
Eastern District Major Crime Squad
DET./TPR. ROBINSON #903

ARREST WARRANT APPLICATION
JD-CR-64b, Rev. 10-04
C.G.S. §54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
*www.jud.state.ct.us*

FOR COURT USE ONLY
Supporting Affidavits Sealed
☐ YES   ☐ NO

| AGENCY NAME | AGENCY NO. |
|---|---|
| CSP-EDMC E | |

| NAME AND RESIDENCE *(Town)* OF ACCUSED | COURT TO BE HELD AT *(Town)* | G.A. NO. |
|---|---|---|
| Leniart, George DOB 01-08-66 300 Massapeag Side Rd Montville, CT | Norwich | 21 |

### APPLICATION FOR ARRREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts
set forth in the:   ☐ AFFIDAVIT BELOW.   ☐ AFFIDAVIT(S) ATTACHED.

| DATE AND SIGNATURE | DATE 10-5-06 | SIGNED *(Prosecuting Authority)* | TYPE/PRINT NAME OF PROSECUTING AUTHORITY |
|---|---|---|---|

### AFFIDAVIT

The undersigned affiant, being duly sworn, deposes and says:

think that she attempted to kick her. George then demanded the cell phone. Brandi took the phone and threw it
against the wall. George then told Brandi to get in the truck. Brandi said, "No" and walked out of the house and
down the driveway. As George came outside he ran over to Corey and started yelling at him. As Brandi was
walking down the street she called her grandmother to ask her to come and pick her up. She told her grandmother
that she had gotten into an argument with her father and that he had hit her. As she was walking away George ran
down the driveway. George then jumped on Brandi almost knooking her over. George then took the cell phone out
of her hand and threw it on the ground smashing it. Brandi was still crying and George yelled at her that she was
fucking this all up. As Brandi and Corey were walking away George came back and said he was sorry and not to
tell any one. While he was talking to them a cop cars started going by. George then pulled them all into the woods.
Brandi could tell that George was scared. He started pleading with them not to tell the police. George instructed
both Brandi and Corey to go up to the house and tell the police a fake story. He told them to say that Brandi was
fighting with her father due to her wanting to leave with her drunk boyfriend. They were to say that George was
not home because he was driving her boyfriend home. Brandi told the police the lie because she was afraid of her
father and did not know what he was going to do. After the police left Brandi's grandmother came to pick them
both up. Brandi stated that she is very afraid of her father and what he might do. Brandi did not go to school due to
the fact she is afraid George would come find her.

  6. That- I then obtained a signed written statement from Corey Michael Piascik DOB 10-15-89. Corey
stated that he and Brandy went out with George and his friend Mike fishing on Georges boat. He had picked them

*(This is page   5   of a   7   page Affidavit.)*

| DATE AND SIGNATURE | DATE 10-05-06 | SIGNED *(Affiant)* 647 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON *(Date)* 10/5/06 | SIGNED *(Judge/Clerk, Comm'r Sup. Ct, Notary Pub.)* |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and
considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense
has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for
he arrest of the above-named accused.

| DATE AND SIGNATURE | SIGNED AT *(City or Town)* | ON *(Date)* 10-5-06 | SIGNED *(Judge / Judge Trial Referee)* | NAME OF JUDGE/JUDGE TRIAL REFEREE |
|---|---|---|---|---|

Connecticut State Police
Eastern District Major Crime Squad
DET./TPR. ROBINSON #903

ARREST WARRANT APPLICATION
JB-CR-54b- Rev. 10-04
*C.G.S. §54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.state.ct.us

FOR COURT USE ONLY
Supporting Affidavits Sealed
☐ YES   ☐ NO

| AGENCY NAME | AGENCY NO. |
|---|---|
| CSP-EDMC E | |

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT (Town) | G.A. NO. |
|---|---|---|
| Leniart, George DOB-01-08-66 300 Massapeag Side Rd. Montville, CT. | Norwich | 21 |

### APPLICATION FOR ARRREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the:   ☐ AFFIDAVIT BELOW.   ☐ AFFIDAVIT(S) ATTACHED.

| DATE AND SIGNATURE | DATE 10-05-06 | SIGNED (Prosecuting Authority) | TYPE/PRINT NAME OF PROSECUTING AUTHORITY |
|---|---|---|---|

### AFFIDAVIT

The undersigned affiant, being duly sworn, deposes and says:

up at the end of their street about 6:45pm. He could tell right away that George and Mike were drunk. They had been drinking and continued to drink as they were on the boat. They had Bud Light, Black Berry Brandy and Jagermister in the cooler on the boat. George and Mike were really nice and helpful while they were fishing. They stayed out on the boat for about thirty minutes and then went to George's house in Montville. As they arrived at the dock by George's house they were met by a kid named Corey. While at the house things were cool and they were grilling the fish. While grilling George asked him if he wanted a beer. Corey said "no" because he did not like beer. George then offered Corey a sip of Black Berry Brandy. Corey never had brandy so he took a sip. After grilling George told his friend Mike to come in the house so he could give him some weed. They all followed into the door entering the basement. Corey described the room as all open. There is a tool area to the right hand side, straight ahead is opened, and then there is a work area behind the stairs. George went up into the ceiling and grabbed a freezer bag filled with marijuana. Based on Corey's experience he figured the bag to contain approximately ½ pound of marijuana. Corey stated that by his computer there is a stair case and then a door. Right above the door there is an opening in the ceiling. That's where George hides the marijuana. George gave Mike a handful of marijuana and told him its time to call it a night. After mike left Brandi asked George if she could go home to her mother's house. George said "No" to Brandi and started to get violent. He then instructed Brandi to go up to her room. At that point George went into the house and locked Corey outside. George then went upstairs with Brandi. About ten minutes later George and Mike came outside. Brandi started to walk down the driveway and George came right over to Corey. George started accusing Corey of "Talking shit on him while he was in the house". George was screaming and yelling by that point. George then said "If you have a problem with me say it

(This is page 6 of a 7 page Affidavit).

| DATE AND SIGNATURE | DATE 10-05-06 | SIGNED (Affiant) 647 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 10/5/06 | SIGNED (Judge/Clerk/Comm. Sup. Ct., Notary Pub.) |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE AND SIGNATURE | SIGNED AT (City or Town) | ON (Date) | SIGNED (Judge/Judge Trial Referee) | NAME OF JUDGE/JUDGE TRIAL REFEREE |
|---|---|---|---|---|

Connecticut State Police
Eastern District Major Crime Squad
DET./TPR. ROBINSON #903

ARREST WARRANT APPLICATION
JD-CR-64b  Rev. 10-04
C.G.S. §54-2a
Pr. Bk. Sec. 36-1, 36-2, 36-3

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.state.ct.us

COPY COURTESY
Supporting Affidavits Sealed
☐ YES    ☐ NO

| | AGENCY NAME | AGENCY NO. |
|---|---|---|
| | CSP-EDMC E | |

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT (Town) | G.A. NO. |
|---|---|---|
| Leniart, George DOB 01-08-66 300 Massapeag-Side Rd Montville, CT | Norwich | 21 |

## APPLICATION FOR ARRREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts
set forth in the:   ☐ AFFIDAVIT BELOW.      ☐ AFFIDAVIT(S) ATTACHED.

| DATE AND SIGNATURE | DATE 10-5-06 | SIGNED (Prosecuting Authority) | TYPE/PRINT NAME OF PROSECUTING AUTHORITY David Smith |
|---|---|---|---|

## AFFIDAVIT

The undersigned affiant, being duly sworn, deposes and says:

now and I'll fuck you up". Corey said he had no problem and went over to Brandi who was on her cell phone with
her grandmother. While she was talking George jumped on Brandi and grabbed her cell phone and smashed the
phone on the ground. Brandi was crying and did not want to talk to George. They were trying to walk away when
they saw light coming around the corner. At that point George pushed them all into the woods avoiding the car.
George was screaming and yelling at them as he grabbed Corey and pulled off his sweat shirt. George started
patting Corey down and was accusing him of stealing his weed. George then told Corey to go search the other
Corey for the weed. He then walked over to the other Corey and patted him down just to get away from George.
He did not want George to get any madder than he all ready was. They then saw police lights on top of a car.
George again pulled them into the woods. While in the woods he told them to tell the police a fake story. George
wanted them to tell the police that Brandi's boyfriend was drunk and George did not want Brandi to leave with him.
If the cops asked where George was he was supposed to tell them that George was driving Brandi's boyfriend
home. George mentioned that if he got arrested that he was going to jail and was facing ten years. George did not
care about anything except not getting arrested. Corey and Brandi then went and told the cops the fake story.

    7. That Based upon the statements obtained from Brandi Leniart and Corey Piascik I determined that
George Leniart provided liquor to Corey Piascik DOB 10-15-89. George Leniart also assaulted Brandi Leniart
while involved in a physical altercation as he struck her in the head with the full can of beer, while being involved
in a physical altercation in her bed room. Based on the facts and circumstances obtained in this investigation I
believe there is probable cause for an arrest of the accused.

(This is page 7 of a 7 page Affidavit.)

| DATE AND SIGNATURE | DATE 10-05-06 | SIGNED (Affiant) DET | 645 |
|---|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 10/5/06 | SIGNED (Judge/Clerk/Comm. Sup. Ct. Notary Pub.) | |

## FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and
considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense
has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for
the arrest of the above-named accused.

| DATE AND SIGNATURE | SIGNED AT (City or Town) Norwich | ON (Date) 10-5-06 | SIGNED (Judge / Judge Trial Referee) | NAME OF JUDGE/JUDGE TRIAL REFEREE J. Fischer |
|---|---|---|---|---|

Connecticut State Police
Eastern District Major Crime Squad
DET./TPR. ROBINSON #903

# Exhibit D

Page 1 of 2

PLAINTIFF'S
EXHIBIT
22

BADGE NO
0647

## STATE OF CONNECTICUT, DEPARTMENT OF PUBLIC SAFETY.
### INVESTIGATION REPORT (DPS-302-E) (REVISED 2/3/06)

Report Type:   Initial Report ☐   Prosecutors Report ☐   Supplement ☑   Re-open ☑   Assist ☐   Closing: ☑

Attachments:   Statements: ☐   Teletype: ☐   Photos: ☑   Sketchmap: ☐   Evidence: ☐   Other: ☐

| CFS NO. | INCIDENT DATE | TIME | INCIDENT DATE | TIME | PRIMARY OFFICER | BADGE NO | INVESTIGATING OFFICER | BADGE NO |
|---|---|---|---|---|---|---|---|---|
| 0600347051 | 10/05/2006 | 09:30 | 10/05/2006 | | HOAGLAND, MICHAEL | 0647 | TFC HOAGLAND, MICHAEL | 0647 |

| INCIDENT ADDRESS | APARTMENT NO | TOWN CD |
|---|---|---|
| 00300 Massapeag Side Rd Montville 06382 | | T086 |

## 35MM PHOTOGRAPHY REPORT

### ACTION TAKEN:

On 10-05-06 at approximately 1730hrs I took the following seventeen (17) 35mm color photographs. These photographs are in connection with a Assault 2nd, Breach of Peace, and Possession of Marijuana case that occurred at 300 Massapeug Side Rd Montville, CT.

The photographs depict the exterior and interior of the residence of the accused, George Leniart.

These photographs were taken by me utilizing a Nikon N70 35mm camera with Kodak 400 speed color print film. There are two sets of color photographs that were developed by the Connecticut State Police Photography laboratory.

Photographs depicted below:

Photo# 1- Photo depicts the entrance to the lower level of the residence.
Photo# 2- Photo depicts the entrance to the lower level of the residence.
Photo# 3- Photo depicts the door entrance of the accused's bedroom.
Photo# 4- Photo depicts the door entrance of the accused's bedroom.
Photo# 5- Photo depicts above the door entrance in the area of the exposed ceiling rafters.

THE UNDERSIGNED, AN INVESTIGATOR HAVING BEEN DULY SWORN, DEPOSES AND SAYS THAT: I AM THE WRITER OF THE ATTACHED POLICE REPORT PERTAINING TO THIS INCIDENT NUMBER; THAT THE INFORMATION CONTAINED THEREIN WAS SECURED AS A RESULT OF (1)MY PERSONAL OBSERVATION AND KNOWLEDGE OR (2)INFORMATION RELAYED TO ME BY OTHER MEMBERS OF MY POLICE DEPARTMENT OR OF ANOTHER POLICE DEPARTMENT OR (3)INFORMATION SECURED BY MYSELF OR ANOTHER MEMBER OF A POLICE DEPARTMENT FROM THE PERSON OR PERSONS NAMED OR IDENTIFIED THEREIN, AS INDICATED IN THE ATTACHED REPORT. THAT THE REPORT IS AN ACCURATE STATEMENT OF THE INFORMATION SO RECEIVED BY ME.

| INVESTIGATOR SIGNATURE: | INVESTIGATOR I.D.#: | REPORT DATE: | SUPERVISOR SIGNATURE | SUPERVISOR I.D.# | DATE |
|---|---|---|---|---|---|
| | 647 | 12-21-06 | | 103 | 12-1-22-06 |

Report #: 0600347051 - 007946

STATE OF CONNECTICUT, DEPARTMENT OF PUBLIC SAFETY-
INVESTIGATION REPORT (DPS-302-E) (REVISED 2/3/06)

Page 2 of 2

Photo# 6- Photo depicts the open and exposed ceiling rafter where the marijuana was located.

Photo# 7- Photo depicts the open and exposed ceiling rafter where the marijuana was located.

Photo# 8- Photo depicts the open and exposed ceiling rafter where the marijuana was located.

Photo# 9- Photo depicts the open and exposed ceiling rafter where the marijuana was located.

Photo# 10- Photo depicts a wooden box assorted containing jewelry located under the bed.

Photo# 11- Photo depicts a wooden box assorted containing jewelry located under the bed.

Photo# 12- Photo depicts a Homeland Security Camera box located on a shelf.

Photo# 13- Photo depicts the security camera monitor along with electronics on a shelving unit.

Photo# 14- Photo depicts the computer monitor displaying Internet connection owned by the accused.

Photo# 15- Photo depicts the computer monitor displaying Internet connection owned by the accused.

Photo# 16- Photo depicts an empty Busch Beer Can located on a table by the bedroom doorway.

Photo# 17- Photo depicts unidentifiable articles.

Photo# 17- Photo depicts unidentifiable articles.

End of photographs.

CASE STATUS: Closed Cleared-Arrest

THE UNDERSIGNED, AN INVESTIGATOR HAVING BEEN DULY SWORN DEPOSES AND SAYS THAT: I AM THE WRITER OF THE ATTACHED POLICE REPORT PERTAINING TO THIS INCIDENT NUMBER;
THAT THE INFORMATION CONTAINED THEREIN WAS SECURED AS A RESULT OF (1)MY PERSONAL OBSERVATION AND KNOWLEDGE; OR (2)INFORMATION RELAYED TO ME BY OTHER MEMBERS
OF MY POLICE DEPARTMENT OR OF ANOTHER POLICE DEPARTMENT;OR (3)INFORMATION SECURED BY MYSELF OR ANOTHER MEMBER OF A POLICE DEPARTMENT FROM THE PERSON OR PERSON/S
NAMED OR IDENTIFIED THEREIN, AS INDICATED IN THE ATTACHED REPORT, THAT THE REPORT IS AN ACCURATE STATEMENT OF THE INFORMATION SO RECEIVED BY ME.

| INVESTIGATOR SIGNATURE: | INVESTIGATOR I.D.# | REPORT DATE: | SUPERVISOR SIGNATURE | SUPERVISOR I.D.# | DATE |
|---|---|---|---|---|---|
| DET | 647 | 12-21-06 | | | |

# Exhibit E







# Exhibit F

Westlaw.

Not Reported in F.Supp.2d, 2010 WL 1677757 (D.Conn.)
**(Cite as: 2010 WL 1677757 (D.Conn.))**

H

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

D. Connecticut.

Andre TWITTY, Plaintiff,

v.

John ASHCROFT, et al, Defendants.

No. 3:04cv410(DFM).

April 23, 2010.

Craig A. Raabe, Jeffrey J. White, Robinson & Cole, Hartford, CT, for Plaintiff.

*RULING ON PLAINTIFF'S MOTION IN LIMINE*

DONNA F. MARTINEZ, United States Magistrate Judge.

*1 Pending before the court is the plaintiff's motion in limine. (Doc. # 133.) For the reasons that follow, the motion is granted in part and denied in part.

I. *Background*

In this § 1983 action, the plaintiff alleges that the defendant, a Connecticut Department of Correction employee, used excessive force during the plaintiff's intake at a Connecticut state prison in 2004. The defendant denies the plaintiff's allegation. According to the defendant, the plaintiff was noncompliant and as a result, a minimal amount of force was used to accomplish the plaintiff's intake and escort.

The plaintiff is presently incarcerated, having been convicted in 1999 of two felonies: willfully communicating a threat in violation of 18 U.S.C. § 844(e) and threatening law enforcement officers and the family of one of the officers in violation of 18 U.S.C. §§ 115(a)(1)(A), (a)(1)(B) and (b)(4)).

II. *Discussion*

The plaintiff seeks to preclude the defendant from introducing testimony and/or documentary evidence of his 1999 felony convictions .[FN1] In the alternative, the plaintiff argues that only the fact "that he is serving prison time for two felony convictions (without identifying the name or underlying details of the offenses)" be admitted. (Doc. # 133 at 1.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1677757 (D.Conn.)
**(Cite as: 2010 WL 1677757 (D.Conn.))**

FN1. In addition to the two 1999 felony convictions, the plaintiff seeks to preclude the admission of his conviction of a(1) misdemeanor in Arizona in 1997 for threats against a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and (2) felony in Minnesota in 1995 for making threatening communications under 18 U.S.C. § 875(c). The defendant has indicated in response to the plaintiff's motion that he "does not intend to elicit any evidence concerning these convictions." (Doc. # 140 at 2.) The plaintiff's motion, therefore, as to the Arizona and Minnesota convictions is denied without prejudice as moot.

The plaintiff argues that the court should preclude evidence of his felony convictions because they are not relevant and the prejudicial effect of their admission substantially outweighs their probative value. The plaintiff points out that jury knows that he was incarcerated both at the time of the incident and currently.[FN2] Under these circumstances, the plaintiff argues, there is little probative value to be gained by introducing evidence as to the underlying felony convictions for which he is incarcerated. In response, the defendant contends that the felony convictions are probative of the plaintiff's credibility.

FN2. The court informed the jurors of this fact during jury selection.

The parties agree that Fed.R.Evid. 609(a)(1) governs the admissibility of the convictions. Rule 609(a)(1) provides that, for the purpose of attacking the credibility of a witness:

[E]vidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403,[FN3] if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted....

FN3. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or need-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1677757 (D.Conn.)
**(Cite as: 2010 WL 1677757 (D.Conn.))**

less presentation of cumulative evidence.

"The Rule requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' Fed.R.Evid. 403. This determination is left to the sound discretion of the district court." *United States v. Estrada,* 430 F.3d 606, 621 (2d Cir.2005).

In "balancing the probative value against prejudicial effect under [Rule 609], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo,* 986 F.Supp. 245, 250 (S.D.N.Y.1997) (citing *United States. v. Hayes,* 553 F.2d 820, 828 (2d Cir.1977)). *See also* 4 Weinstein's Federal Evidence, § 609.05[2] at 609.34 (2010). "Although all of these factors are relevant, '[p]rime among them is [the first factor, i.e.,] whether the crime, by its nature, is

probative of a lack of veracity." *United States v. Brown,* 606 F.Supp.2d 306, 312 (E.D.N.Y.2009) (citing *United States v. Ortiz,* 553 F.2d 782, 784 (2d Cir.1977)).

**\*2** As to the first factor, although "[ r]ule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," *United States v. Estrada,* 430 F.3d 606, 617 (2d Cir.2005), "all Rule 609(a)(1) felonies are not equally probative of credibility." *Id.* at 618. The plaintiff's convictions for threatening are not particularly probative as to honesty or veracity. *See id.,* at 617-18 (noting that convictions for violent or assaultive crimes generally do not relate to credibility).

As to the second criterion, the "probative value of a conviction decreases as its age increases." 4 Weinstein's Federal Evidence, § 609.05[3][d] at 609-41 (2d ed.2010). Neither party argues the effect of this consideration and the court finds that the factor does not appear to be significant in this case, neither diminishing nor adding to the probative value of the plaintiff's convictions.

"The third criterion, similarity of the crimes, deals with the similarity of the charged crimes, or

Not Reported in F.Supp.2d, 2010 WL 1677757 (D.Conn.)
**(Cite as: 2010 WL 1677757 (D.Conn.))**

the incident at issue in the pending case, to the conviction. The less similar the pending case to the prior conviction, the less prejudicial its admission is." *Stephen v. Hanley,* No. 03-CV-6226 (KAM)(LB), 2009 WL 1471180, at *5 (E.D.N.Y. May 21, 2009). On the other hand, a conviction for a crime that bears a close resemblance to actions alleged in the current case might cause "unfair prejudice to the party against whom they are offered by suggesting that the party has a propensity to commit such acts." *Lewis v. Velez,* 149 F.R.D. 474, 483 (S.D .N.Y.1993).

In this case, the plaintiff contends that admission of his convictions would impermissibly invite a propensity inference, that is, that he "has a propensity to 'threaten' authority figures or act aggressively, which is particularly prejudicial in the case at hand given that the defendant asserts that the plaintiff threatened the corrections officers on the date in question." (Doc. # 133 at 10.)

A similar argument was made in *Lewis v. Velez,* 149 F.R.D. 474 (S.D.N.Y.1993). As in this case, the plaintiff in *Lewis* was an inmate who alleged that the defendant correction officers used excessive force. The plaintiff sought to preclude admission of his prior assault conviction because he feared its admission would result in undue prejudice. The court agreed, finding that

[g]iven the facts of the current case, assault convictions skirt too close to the impermissible suggestion that the plaintiff had a propensity toward violence and acted in conformity with his aggressive predisposition. Informing the jury that [plaintiff] has been convicted for a prior assault would be unacceptably prejudicial. Thus, while the fact that [plaintiff] is a convicted felon serving a sentence of eleven years to life may be elicited, the charge on which he was convicted may not.

149 F.R.D. at 483.

The danger in this case, as in *Lewis,* is that the nature of the plaintiff's convictions might unfairly bias the jury against him. Although the plaintiff was convicted of making threats (as opposed to assault), his convictions are for crimes of violence. The court is persuaded that the jury is likely to draw the inference from the nature of the plaintiff's convictions that he has the propensity to engage in violent behavior.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1677757 (D.Conn.)
(Cite as: 2010 WL 1677757 (D.Conn.))

**\*3** Finally, it is undisputed that the plaintiff's credibility is a central issue in this case. Therefore, this factor weighs in favor of admitting the convictions for impeachment purposes pursuant to Rule 609.

Based on the foregoing considerations, the court finds that the probative value of the fact of the plaintiff's felony convictions as well as the date and the sentence imposed outweighs the prejudicial effect of this evidence. However, the probative value of the name and nature of the convictions is substantially outweighed by the danger of unfair prejudice. Accordingly, evidence as to the date of the plaintiff's two felony convictions and the sentence is admissible; the names of the convictions are not. *See Giles v. Rhodes,* No. 94 CIV. 6385(CSH), 2000 WL 1510004, at \*1 (S.D.N.Y. Oct. 10, 2000) ("numerous courts have exercised their discretion to admit evidence of the fact that a witness has been convicted of a felony while barring evidence of the underlying details of the offense"). *See, e.g., United States v. Brown,* 606 F.Supp.2d 306, 312 (E.D.N.Y.2009)("In the Second Circuit, it is within the discretion of the district courts to further limit the evidence of the prior conviction to exclude the nature or statutory name of the offense."); *United States v. Joe,* No. 07 Cr. 734(JFK), 2008 WL 2810169, at \*4 (S.D.N.Y. July 21, 2008) (Government restricted to inquiring about date of prior conviction and sentence imposed and precluded from inquiry into the statutory name of the offense or the facts underlying the conviction because "this detail poses a danger of unfair prejudice"); *Livingston v. Lee,* No. 9:04-cv-00607(JKS), 2007 WL 3197517, at \*1 (N.D.N.Y. Oct. 26, 2007) (in § 1983 case brought by prisoner plaintiff, court precluded evidence of "particular crime for which [plaintiff] was convicted or his sentence"); *Clem v. Lomeli,* No. 2:05cv02129 (JKS), 2007 WL 2688842 (E.D.Cal. Sept. 13, 2007) (in excessive force case brought by prisoner plaintiff, evidence limited to the fact that plaintiff was convicted of a felony); *Giles v. Rhodes,* No. 94 CIV. 6385(CSH), 2000 WL 1510004, at \*1 (S.D.N.Y. Oct. 10, 2000)(in excessive force case brought by prisoner plaintiff, defendants permitted to cross-examine plaintiff "concerning the fact that he is a convicted felon sentenced to more than one year in prison court" but not as to acts and circumstances of his conviction and length of his sentence as that evidence "poses a danger of unfairly prejudicing the jury");

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1677757 (D.Conn.)
**(Cite as: 2010 WL 1677757 (D.Conn.))**

*Daniels v. Loizzo,* 986 F.Supp. 245, 251 (S.D.N.Y.1997) (limiting "Defendants' use of the conviction to the fact and date of the conviction"); *Young v. Calhoun,* No. 85 CIV. 7584(SWK), 1995 WL 169020, at *4 (S.D.N.Y. Apr. 10, 1995)(in civil rights action by prisoner plaintiff, court held that "[w]hile [plaintiff's] prior felony conviction [of murder] is relevant to his credibility, however, evidence concerning the type of crime for which he is incarcerated is not necessary to impeach his credibility" and precluded defendants from eliciting details as to the nature of the offense).

III. *Conclusion*

**\*4** For these reasons, the plaintiff's motion in limine is granted in part and denied in part. Evidence as to the date of the plaintiff's two felony convictions and the sentence is admissible; the names of the offenses are not.

SO ORDERED.

D.Conn.,2010.

Twitty v. Ashcroft

Not Reported in F.Supp.2d, 2010 WL 1677757 (D.Conn.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Date of Printing: Feb 21, 2013

**KEYCITE**

**H** Twitty v. Ashcroft, **2010 WL 1677757 (D.Conn., Apr 23, 2010) (NO. 304CV410DFM)**

**History**

**Direct History**

=>        1 **Twitty v. Ashcroft,** 2010 WL 1677757 (D.Conn. Apr 23, 2010) (NO. 304CV410DFM)

**Related References**

**H**        2 Twitty v. Ashcroft, 2008 WL 312456 (D.Conn. Jan 31, 2008) (NO. 3:04-CV-410 RNC)

**H**        3 Twitty v. Ashcroft, 2008 WL 346124 (D.Conn. Feb 04, 2008) (NO. 3:04-CV-410 (RNC))

**H**        4 Twitty v. Ashcroft, 712 F.Supp.2d 30 (D.Conn. Apr 22, 2009) (NO. 3:04CV410 DFM)

**H**        5 Twitty v. Ashcroft, 2011 WL 59303 (D.Conn. Jan 06, 2011) (NO. 3:04CV410 DFM)

            *Affirmed by*

**H**        6 Twitty v. Salius, 455 Fed.Appx. 97 (2nd Cir.(Conn.) Jan 19, 2012) (Not selected for publication

            in the Federal Reporter, NO. 11-448)

**Court Documents**

**Dockets (U.S.A.)**

**D.Conn.**

            7 TWITTY v. ASHCROFT ET AL, NO. 3:04cv00410 (Docket) (D.Conn. Mar. 10, 2004)

© 2013 Thomson Reuters. All rights reserved.

# Exhibit G

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 2810169 (S.D.N.Y.), 76 Fed. R. Evid. Serv. 1331
**(Cite as: 2008 WL 2810169 (S.D.N.Y.))**

C

United States District Court,

S.D. New York.

UNITED STATES of America,

v.

Darryl JOE, Defendant.

No. 07 Cr. 734(JFK).

July 21, 2008.

Michael J. Garcia, United States Attorney for the Southern District of New York, of Counsel: Michael D. Maimin, Esq., Assistant United States Attorney, New York, NY, for the United States of America.

Kelley J. Sharkey, Esq., Brooklyn, NY, for the Defendant.

### OPINION & ORDER

JOHN F. KEENAN, District Judge.

*1 The defendant, Darryl Joe ("Joe", or "Defendant"), is charged by superseding indictment with four counts: being a previously-convicted felon in possession of a firearm and ammunition, in violation 18 U.S.C. § 922(g)(1) ( "Count One");

possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. § 5861(d) ("Count Two"); carjacking, in violation of 18 U.S .C. § 2119(1) ("Count Three"); and brandishing a firearm—and aiding and abetting the brandishing of a firearm—during and in relation to a federal crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 ("Count Four"). Trial is scheduled to begin on July 22, 2008.

Before the Court is the Government's request for pretrial rulings on the admissibility of certain evidence. The Government seeks rulings: (1) that it may introduce evidence of the facts underlying Joe's 2003 felony conviction for possession of a loaded firearm, pursuant to Federal Rule of Evidence 404(b); (2) that it may cross-examine Joe about this prior conviction if he testifies, pursuant to Federal Rule of Evidence 609(a)(1); (3) that the defense may not cross-examine the victim, Michael Hargrove ("Hargrove", or the "Victim"), about certain prior offenses; and (4) that the defense may not elicit evidence of Joe's acquittal on a felon-in-possession charge in the Southern District of New York in 2007.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2810169 (S.D.N.Y.), 76 Fed. R. Evid. Serv. 1331
**(Cite as: 2008 WL 2810169 (S.D.N.Y.))**

The Government made these requests in a letter dated March 3, 2008 ("Govt.'s Letter").[FN1] At a conference held on June 19, 2008, Joe's former court-appointed attorney moved to be relieved as counsel. The motion was granted and Kelly Sharkey, Esq., was appointed as new counsel. Ms. Sharkey submitted a letter in response to the Government's requests on July 9, 2008 ("Def.'s Letter").

> FN1. The letter is addressed to Judge Richard J. Holwell, to whom this case originally was assigned. The case was reassigned to me on June 26, 2008. In its March 3 letter, the Government also opposed Defendant's pro se motion to dismiss the indictment on speedy trial grounds. At a pre-trial conference held on June 30, 2008, I issued an oral decision denying the motion.

### Background

The Government hopes to prove at trial the following, along with other facts.

On or about July 14, 2007, two armed men—one carrying a pistol and the other a shotgun—stole a car from the Victim at gunpoint. The Victim called 911 to report the carjacking. Shortly thereafter, a police officer saw the Victim's car being driven by a man, alleged to be the Defendant, matching the description of one of the suspects.

After the police drove behind the Victim's car, the Defendant stopped the car, jumped out and ran into a building. At that time, the Defendant was wearing a blue striped shirt. A police officer secured the Victim's car and saw a bag on the floor in the back of the car with a shotgun sticking out of it. The bag turned out to contain a sawed-off Remington shotgun and several rounds of shotgun ammunition.

Police officers entered the building and found the Defendant, out of breath and sweating, in the hallway of one of the floors. The Defendant was unable to explain his presence in the building satisfactorily. When the Defendant was brought outside, police officers identified him as the man they had seen run from the Victim's car into the building. At this time, the Defendant was wearing a white undershirt. Police officers found a blue striped shirt on the ground below a stairwell window inside the building in which they had just found the Defendant. Later, at the police station, the Victim identified the Defendant as one of the men who stole the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2810169 (S.D.N.Y.), 76 Fed. R. Evid. Serv. 1331
**(Cite as: 2008 WL 2810169 (S.D.N.Y.))**

Victim's car at gunpoint.

## *Discussion*

**A. Rule 404(b) evidence of Defendant's prior possession of firearms**

**\*2** Under Rule 404(b), evidence of uncharged acts is not admissible merely to prove the defendant's character or propensity, but is admissible for any other relevant purpose, such as to show "preparation, plan, knowledge, identity, or absence of mistake or accident" where those issues are in dispute. Even if admissible under Rule 404(b), the evidence is subject to a Rule 403 balancing test and must be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403; *United States v. Paulino,* 445 F.3d 211, 221 (2d Cir.2006) (stating that the Second Circuit "has long held an inclusionary approach" to uncharged acts evidence).

The Government has offered to prove at trial that, on July 27, 2003, Joe possessed a loaded 9mm Interarms model firearm in the vicinity of 1223 Boston Post Road in the Bronx, which is near where Joe allegedly possessed the shotgun in the instant case. The Government would further prove that Joe threw to the ground a black bag containing the firearm and ran away after being observed by an NYPD officer.[FN2]

FN2. This conduct led to the 2003 felony conviction that is charged as an element of Count One of the indictment, the 922(g)(1) count. Because the Defendant has agreed to stipulate to the fact of a prior felony conviction to sustain that element, *see* Def.'s Letter at 1, the Government may not offer evidence of the 2003 conviction for this purpose. *United States v. Gilliam,* 994 F.2d 97, 102 (2d Cir.1993). This is a separate issue from whether the facts underlying the conviction may be admitted for some relevant purpose under Rule 404(b), or whether the conviction is admissible for impeachment under Rule 609(a)(1), discussed *infra.*

The Government conditions its proffer on Joe raising certain defenses at trial, either in his opening statement, on cross-examination or through the presentation of evidence. These defenses are the following: "[1] that [the Defendant] did not possess a firearm on July 14, 2007; [2] that whatever the Victim saw the Defendant carry, or saw the De-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2810169 (S.D.N.Y.), 76 Fed. R. Evid. Serv. 1331
**(Cite as: 2008 WL 2810169 (S.D.N.Y.))**

fendant's cohort carry, was not a gun; and [3] that the gun recovered from the Victim's car was not the Defendant's gun or was not the Defendant's cohort's gun, placed in the Defendant's possession." (Govt.'s Letter at 3). The Government contends that these defenses would place in dispute Joe's knowledge, intent and lack of mistake or accident with respect to the charged gun possession, making his prior possession relevant to prove these issues.

The first defense—denial of the gun possession—would not place Joe's intent, knowledge, or lack of mistake or accident into dispute. The Government asserts that, because the gun possession charge requires proof of knowledge and intent, Joe's claim that he did not possess the gun would bring these topics in issue. But the Second Circuit has "recognized a distinction between defense theories that claim that a defendant did not do the charged act at all, and those that claim that the defendant did the act innocently or mistakenly, with only the latter truly raising a disputed issue of intent." *United States v. Colon,* 880 F.2d 650, 657 (2d Cir.1989); *United States v. Ortiz,* 857 F.2d 900, 904 (2d Cir.1988) (stating that "intent is not placed in issue by a defense that the defendant did not do the

charged act at all").

The second anticipated defense—that the Victim did not really see Joe or his alleged cohort carry a gun—would place only the Victim's knowledge of Joe's gun possession in dispute. It would not open the door for Rule 404(b) evidence to prove Joe's knowledge or intent.

**\*3** The third defense—that the gun recovered from the Victim's car did not belong to Joe—may or may not place his knowledge, intent, or lack of mistake or accident into dispute. If Joe claims that he was never in the Victim's car, so that the shotgun could not have been in his possession, then his knowledge or intent with respect to possessing the shotgun is not in issue. On the other hand, if Joe's defense implies that he was in the Victim's car but did not know or intend for the shotgun to be in his constructive possession, then evidence of his prior gun possession will be admissible to prove his knowledge, intent, and lack of mistake or accident. *See United States v. Zackson,* 12 F.3d 1178, 1182 (2d Cir.1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2810169 (S.D.N.Y.), 76 Fed. R. Evid. Serv. 1331
**(Cite as: 2008 WL 2810169 (S.D.N.Y.))**

commit the offense charged ."); *United States v. Brown,* 961 F.2d 1039, 1042 (2d Cir.1992) (where defendant claimed that the illegal machine gun found in his apartment belonged to others who had access to the apartment, evidence of other firearms found in his apartment and truck was admissible to establish his knowledge and the absence of mistake or accident with respect to the presence of the machine gun).

Because the relevance of the 2003 gun possession to Joe's knowledge or intent depends upon the defense theory, the Court will reserve decision on the third possible defense until trial. "As a general rule, the offer of evidence to prove the defendant's intent or knowledge should await the conclusion of the defendant's case" unless it is apparent from the beginning that intent will be in dispute. *United States v. Pitre,* 960 F.2d 1112, 1120 (2d Cir.1992).

**B. Cross-examination of Defendant about his prior conviction for firearms possession**

The Government also wishes to cross-examine Joe about his 2003 felony conviction for firearms possession if he takes the stand, in order to attack his character for truthfulness pursuant to Federal Rule of Evidence 609(a)(1). That rule permits the impeachment of a defendant witness with evidence of a prior felony conviction if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused," provided that the conviction is no more than ten years old. Fed.R.Evid. 609(a)(1) & (b).

Defendant argues that the Government should only be permitted to cross-examine him about the fact of his prior conviction, which already will be in evidence by stipulation. *See supra* n. 2. Further questioning about the details of the conviction and the facts underlying it would cause unfair prejudice, Joe asserts, because the jury may infer from his prior firearms possession a propensity to commit firearms offenses.

The Second Circuit has held that "while it may be proper to limit, under Rule 609(a)(1), evidence of the underlying facts or details of a crime of which a witness was convicted, inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed is presumptively required by the Rule, subject to [probative-prejudice] balancing." *United States v. Estrada,* 430 F.3d 606, 616 (2d Cir.2005). Therefore, district courts must

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2810169 (S.D.N.Y.), 76 Fed. R. Evid. Serv. 1331
**(Cite as: 2008 WL 2810169 (S.D.N.Y.))**

"undertake an individualized balancing analysis under Rule 609(a) (1) before excluding evidence of the statutory name of a witness's crime ... [M] any factors are relevant to a district court's exercise of discretion under Rule 609(a)(1), prime among them being whether the crime, by its nature, is probative of a lack of veracity ." *Id.* at 616–17 (internal quotation marks and brackets omitted).

**\*4** I find that the fact of Joe's prior felony conviction, its date, and the sentence imposed are probative of his lack of respect for the law and credibility. The prejudicial effect of this evidence will be minimal because the jury will already know, by stipulation, that he had been convicted of a felony before his arrest in the instant case.

However, unlawful possession of a firearm does not "rest on dishonest conduct" and is not very probative of an untruthful character. *See Estrada,* 430 F.3d at 617–618 (distinguishing "between crimes that reflect adversely on a person's integrity, and which therefore bear on honesty-such as those involving deceit, fraud, and theft-and acts of violence, 'which may result from a short temper, a combative nature, extreme provocation, or other causes, [and] generally have little or no direct bear-ing on honesty and veracity.' "). Allowing the jury to know the statutory name of the offense would add little to their assessment of Joe's credibility. At the same time, this detail poses a danger of unfair prejudice. Because the prior conviction for firearms possession is nearly identical to the conduct charged in Count One, the jury may infer unfairly that Defendant has a propensity to commit firearms offenses.

Therefore, the Government is restricted to inquiring about the date of the prior conviction and the sentence imposed. The Government may not inquire into the statutory name of the offense or the facts underlying the conviction, unless those details should come in independently, for example through Rule 404(b) as set forth supra at pp. 7–8.

**C. Cross-examination of the Victim about prior offenses**

The Government seeks a ruling that would preclude the defense from cross-examining Hargrove about certain prior offenses. The defense states that it may wish to cross-examine Hargrove pursuant to Rules 404(b) and 609(a)(1) about the following: a 1993 conviction for possession of crack/cocaine in the seventh degree, which occurred within blocks

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2810169 (S.D.N.Y.), 76 Fed. R. Evid. Serv. 1331
**(Cite as: 2008 WL 2810169 (S.D.N.Y.))**

of the alleged carjacking; a 1994 assault upon a police officer which resulted in a plea to disorderly conduct and a fine; and a 2004 arrest for a drug sale, occurring at the same location as the alleged carjacking, which resulted in a plea to disorderly conduct and a one-year conditional discharge. Defendant has also requested additional time to develop a justification to cross-examine Hargrove on these topics.

Cross-examination on these prior offenses will not be permitted pursuant to Rule 609. The 1993 drug possession conviction is outside the ten-year time limit, and its probative value for the victim's truthfulness does not "substantially outweigh" its prejudicial effect. *See* Fed.R.Evid. 609(b). The 1994 assault and 2004 drug sale resulted in pleas to disorderly conduct, which is not a crime under New York law and is not punishable by imprisonment in excess of one year, *see* N.Y Penal Law §§ 10.00(6), 240.20 & Sent. Chart VII, nor does it involve dishonesty or false statements. *See* Fed.R.Evid. 609(a)(1) & (2).

**\*5** If the Defendant will seek to cross-examine Hargrove about these prior offenses pursuant to Rule 404(b) or some other rule, he must inform the Court and the Government before opening statements and set forth the new basis for such request.

**D. Evidence of Defendant's 2007 acquittal**

Finally, the Government requests that Defendant be precluded from introducing evidence of his jury acquittal of a felon in possession charge in the Southern District of New York in 2007. Defendant indicates that he does not presently intend to offer his judgment of acquittal into evidence; therefore no ruling is required at this time. The Defendant also has informed the Court that law enforcement personnel who will testify in the instant case may have been involved in that prior case. If so, the Defendant will notify the Court whether he seeks to cross-examine those witnesses about the prior case, and the Court will rule on the permissibility of such inquiry at that time.

### *Conclusion*

This constitutes the Court's ruling on the Government's request for in limine rulings.

### IT IS SO ORDERED.

S.D.N.Y.,2008.

U.S. v. Joe

Not Reported in F.Supp.2d, 2008 WL 2810169

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2810169 (S.D.N.Y.), 76 Fed. R. Evid. Serv. 1331
**(Cite as: 2008 WL 2810169 (S.D.N.Y.))**

(S.D.N.Y.), 76 Fed. R. Evid. Serv. 1331

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Date of Printing: Feb 21, 2013

**KEYCITE**

C U.S. v. Joe, **2008 WL 2810169, 76 Fed. R. Evid. Serv. 1331 (S.D.N.Y., Jul 21, 2008) (NO. 07 CR. 734 (JFK))**

### History

### Direct History

=>    1 **U.S. v. Joe,** 2008 WL 2810169, 76 Fed. R. Evid. Serv. 1331 (S.D.N.Y. Jul 21, 2008) (NO. 07 CR. 734 (JFK))

### Court Documents

### Trial Court Documents (U.S.A.)

**S.D.N.Y. Trial Pleadings**

2 UNITED STATES OF AMERICA, v. Darryl JOE, Defendant., 2007 WL 4977363 (Trial Pleading) (S.D.N.Y. Aug. 9, 2007) **Indictment** (NO. 07CRIM734)

3 UNITED STATES OF AMERICA, v. Darryl JOE, Defendant., 2007 WL 4977362 (Trial Pleading) (S.D.N.Y. Nov. 28, 2007) **Indictment** (NO. RJH, S107734)

### Dockets (U.S.A.)

**S.D.N.Y.**

4 USA v. JOE, NO. 1:07cr00734 (Docket) (S.D.N.Y. Aug. 9, 2007)

© 2013 Thomson Reuters. All rights reserved.

# Exhibit H

| State of Connecticut<br>Department of Correction | Directive Number<br>11.4 | Effective Date<br>6/30/2009 | Page 1 of 4 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Supersedes | New Directive | |
| Approved By *[signature]* | Title | Searches Conducted in the Community | |

1. <u>Policy</u>. The Department of Correction shall conduct random and periodic searches of offenders released to the community in order to enhance public safety and ensure compliance with program provisions and conditions of release. The Department may seize contraband in order to promote public and staff safety.

2. <u>Authority and Reference</u>.

   A. <u>Court Cases</u>. Cases include, but are not limited to the following:

      1. Samson v. California, 547 US 843 (2006);
      2. California v. Chimel, 395 US 752 (1967);
      3. Maryland v. Buie, 494 US 325, 334 (1990);
      4. Terry v. Ohio, 392 US 1 (1968);
      5. State v. Spencer, 268 Conn. 575, 591 (2004);
      6. State v. Reddick, 15 Conn. App. 342, 345-46, cert. denied, 209 Conn. 819 (1988);
      7. State v. Fletcher, 63 Conn. App. 476, 480, cert. denied, 257 Conn. 902 (2001).

   B. Connecticut General Statutes, Sections 18-81, 18-100(e), 18-100c, 53a-3, 54-125, 54-125a, and 54-125e.
   C. Administrative Directives 6.5, Use of Force; 6.6, Reporting of Incidents; 6.7, Searches Conducted in Correctional Facilities; 6.8, Urinalysis; 6.9, Control of Contraband and Physical Evidence; and 6.11, Canine Unit.
   D. Department of Correction, Parole and Community Services Division, Field Operations Manual.
   E. American Correctional Association, Standards for Adult Probation and Parole Field Services, Third Edition, August 1998, Standard 3-3177.

3. <u>Definitions</u>. For the purposes stated herein, the following definitions apply:

   A. <u>Compliance Search</u>. A periodic, random search, announced or unannounced, with or without reasonable suspicion, to monitor compliance with parole or community supervision conditions.
   B. <u>Consent Search</u>. A search of an individual, other than the offender, and/or his/her property or premises by a parole officer when the individual has given voluntary consent for such search.
   C. <u>Contraband</u>. An item not authorized to be in an offender's possession or control whether on the offender's person, or in other areas including but not limited to a vehicle, contract program area, etc.
   D. <u>Dangerous Instrument</u>. Any instrument, article, or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury.
   E. <u>Exigent Circumstances</u>. Situations that demand immediate action due to a compelling need and when there is no time to obtain prior approval of a parole manager, including emergency situations involving:

| Directive Number 11.4 | Effective Date 6/30/2009 | Page 2 of 4 |
|---|---|---|
| Title | Searches Conducted in the Community | |

      1.     a danger to human life;
      2.     the destruction of evidence;
      3.     the flight of an offender; or,
      4.     the commission of a crime.

F.    <u>Investigative Detention</u>. The limited detention for the purpose of a restricted, incidental pat search when the employee believes that there is a threat and there is reasonable suspicion that the individual being searched has a weapon or dangerous instrument.

G.    <u>Offender</u>. An individual subject to supervision as the result of the commission of a criminal offense and released to the community under the jurisdiction of the Commissioner of Correction or the Chairman of the Board of Pardons and Paroles.

H.    <u>Pat Search</u>. A systematic observation and physical inspection, using the hands, of a person while clothed. A pat search shall include an inspection of the person's clothing and any item in the person's possession.

I.    <u>Reasonable Suspicion</u>. Judgment based on specific objective facts and reasonable inferences drawn in light of experience, training and education.

J.    <u>Residential Services Provider (Halfway Houses)</u>. A non-profit agency contracted to provide residential and support services to assist offenders with a successful community re-integration.

K.    <u>Search</u>. Any inspection of a person, area or property.

L.    <u>Strip-Search</u>. A strip-search shall mean a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair, body cavities (to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, and rectum) and genitalia. This search shall also include a physical search of the clothing and any personal effects.

M.    <u>Toxicology Test</u>. The analysis of a specimen (e.g., urine, swab, breath, etc.) for the purposes of determining the presence of an illegal or prohibited substance.

N.    <u>Weapon</u>. Any firearm, including a BB gun, loaded or unloaded; any knife including a pocketknife; any baton, nightstick, martial arts weapon; any electronic defense weapon; or anything else that can reasonably be anticipated to be used to cause physical injury to staff, the offender or others.

4.    <u>Searches</u>. Searches with or without reasonable suspicion shall be conducted as follows:

A.    <u>Searches when Supervisory Authorization is Not Required</u>. Supervisory authorization shall not be required for searches in the following circumstances:

      1.    <u>Metal Detector Scan</u>. A metal detector scan shall be performed on each offender prior to entry into the secure area of the district parole office in accordance with the Parole and Community Services Field Operations Manual.

      2.    <u>Offender Pat Search</u>. A pat search shall be conducted:

          a.    when an offender cannot pass a metal detector scan;
          b.    prior to a toxicology test; or,
          c.    to ensure the safety of the officer, the offender and others, when warranted.

| Directive Number 11.4 | Effective Date 6/30/2009 | Page 3 of 4 |
|---|---|---|
| Title | Searches Conducted in the Community | |

3. <u>Toxicology Tests</u>. Toxicology tests shall be conducted in accordance with the offender's conditions of release and his/her level of supervision.

4. <u>Consent Searches of Third Parties</u>. A search of a third party may be performed with the consent of the individual. Such searches may include a search of the individual's person, property (including a motor vehicle) or residence. Parole staff must obtain the individual's consent to be searched. When feasible, such consent shall be in writing using CN 114001, Consent to Search and Examine Evidence.

5. <u>Investigative Detention of a Third Party</u>. A third party may be temporarily detained and pat searched when the employee believes that there is a threat and there is reasonable suspicion that the individual being searched has a weapon or dangerous instrument. All detentions of a third party shall be documented on CN 6601, Incident Report by the employee detaining the third party. The completed incident report shall be submitted to employee's supervisor prior to the conclusion of the employee's shift.

B. <u>Searches when Supervisory Authorization is Required</u>. Supervisory authorization shall be required prior to conducting a search in the following circumstances:

1. <u>Search of an Offender's Residence, Property and Place of Employment</u>. Absent exigent circumstances, a search of an offender's residence, property (including a motor vehicle) or place of employment shall only be conducted when authorized by a parole manager or higher authority. Such authorization shall be documented in accordance with the Parole and Community Services Field Operations Manual.

2. <u>Strip-Search of an Offender</u>. Absent exigent circumstances, a strip-search of an offender shall only be conducted when authorized by a parole manager or higher authority. Such authorization shall be documented in accordance with the Parole and Community Services Field Operations Manual. Strip-searches shall be performed in accordance with Administrative Directive 6.7, Searches Conducted in Correctional Facilities.

C. <u>Searches of Residential Services Provider</u>. The Parole and Community Services Division (Residential Services Unit) shall coordinate random searches of each residential services provider. Such searches shall be conducted, at a minimum, once per year. Searches of residential service providers shall include, but not be limited to, the program building, pat searches of all offenders present, random toxicology tests, and searches of all offender property. Canine units may be used in accordance with Section 6 of this Directive.

5. <u>Seizure and Storage of Contraband</u>. The Director of Parole and Community Services shall develop and implement procedures for the handling and storage of seized contraband resulting from searches conducted in the community in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence.

| Directive Number | Effective Date | Page 4 of 4 |
|---|---|---|
| 11.4 | 6/30/2009 | |
| Title | | |
| Searches Conducted in the Community | | |

6.  Use of Canines in the Community. Canine units may be used in the community as follows:

    A.  Use of Department of Correction Canines. The Parole and Community Services Division may request canine support from the Department's Operations Division (Canine Unit) in accordance with Administrative Directive 6.11, Canine Unit. Such use of canines shall be limited to residential service provider (halfway house) searches only.

    B.  Use of Department of Public Safety and/or Municipal Police Department Canines. The Parole and Community Services Division may request canine support from the Department of Public Safety and/or the appropriate municipal police department(s) for the purposes of contraband searches, offender tracking and/or remands to custody.

7.  Forced Entries. Forced entries shall only be authorized with a valid search warrant or if there are exigent circumstances and the parole officer has specific, clearly stated facts which justify the urgency of using an immediate forced entry. Any such use of force to gain entry must be documented in an incident report in accordance with Administrative Directive 6.6, Reporting of Incidents, and shall include the specific, clearly stated facts justifying the forced entry, the nature and extent of force used, and the nature and extent of the injury or damage, if any, to person or property. Photographs shall be taken of each entry point used in order to document any damage, or lack of damage, to the residence.

8.  Forms and Attachments. The following form is applicable to this Administrative Directive and shall be utilized for the intended function:

    A.  CN 11.0401, Consent to Search and Examine Evidence.

9.  Exceptions. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.