UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEORGE M. LENIART | : | |
| | : | |
| v. | : | CIV. NO. 3:09CV9(HBF) |
| | : | |
| WILLIAM BUNDY, et al. | : | |
| | : | |

**RULING ON PLAINTIFF'S MOTION FOR A NEW TRIAL PURSUANT TO FRCP 59 AND 60(b)(2) [DOC. #267]**

Plaintiff George M. Leniart ("plaintiff") brought this civil rights action under 42 U.S.C. section 1983, alleging that defendants[1] violated his constitutional rights by conducting warrantless searches of his residence and unlawfully arresting him on two separate occasions. See Doc. #35, Amended Complaint.[2] A jury trial was held on February 10 through 13, 2015, on the following claims: (1) unreasonable search on October 5, 2006, against defendants Bransford, Hoagland, Blanchette and Bundy; and (2) unreasonable search and seizure on September 25, 2007, against defendant Ellison. On February 13, 2015, the jury rendered a verdict in favor of all defendants and against plaintiff. [Doc. #256]. On March 19, 2015, plaintiff filed a Motion for New Trial Pursuant to Federal Rules of Civil

[1] William Bundy, Wilfred J. Blanchette, III, Michael Hoagland, "Ellison", and Larry Bransford (hereinafter collectively referred to as the "defendants").

[2] Plaintiff withdrew his false arrest claim against defendant Hoagland on the first day of trial. [Doc. #251].

Procedure 59 and 60(b)(2), along with a Memorandum in Support. [Doc. ## 267, 268]. On April 4, 2016, defendants filed a Memorandum in Opposition to plaintiff's motion [Doc. #288], to which plaintiff filed a Reply on May 2, 2016 [Doc. #291]. For the reasons articulated below, the Court **DENIES** plaintiff's Motion for New Trial. [**Doc. #267**].[3]

## I. STANDARD OF REVIEW

"Because motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict; that is, newly discovered evidence must be of a sort that could, if believed, change the verdict." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995); see also Chang v. City of Albany, 150 F.R.D. 456, 460 (N.D.N.Y. 1993) ("Motions for a new trial based upon the post-trial discovery of new evidence are generally disfavored." (citation omitted)). "Absent a showing of prejudice [resulting from the missing evidence], the jury's verdict should not be disturbed." Mazzei v. Money Store, 656 F. App'x 558, 560 (2d Cir. 2016) (citations omitted) (alterations in original); see also Ladenburg Thalmann & Co. v. Modern Cont'l Const. Holding Co., 408 F. App'x 401, 405 (2d Cir. 2010) ("A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously

[3] As will be further discussed, the briefing on plaintiff's Motion for New Trial was held in abeyance pending the potential forensic examination of the micro-cassette tape.

erroneous result or that the verdict is a miscarriage of justice." (citation omitted)).

"The decision whether to grant a new trial under Rule 59 is committed to the sound discretion of the trial court." Alston v. Pafumi, No. 3:09CV01978(VAB), 2016 WL 7191550, at *1 (D. Conn. Dec. 12, 2016) (quoting Claudio v. Mattituck-Cutchogue Union Free Sch. Dist., 955 F. Supp. 2d 118, 142 (E.D.N.Y. 2013)). This discretion, however, is "limited by a number of well-established prerequisites." Chang, 150 F.R.D. at 460 (citation omitted). Indeed, "the party seeking relief from judgment has an onerous standard to meet, being required to show that: (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding; (2) the movant was justifiably ignorant of them despite due diligence; (3) the evidence is admissible and of such importance that it probably would have changed the outcome; and (4) the evidence is not merely cumulative or impeaching." Lorusso v. Borer, No. 3:03CV504(MRK), 2006 WL 473729, at *12 (D. Conn. Feb. 28, 2006) (emphasis in original) (alterations omitted), aff'd, 260 F. App'x 355 (2d Cir. 2008); see also Chang, 150 F.R.D. at 460 ("A party must show that (1) the evidence was discovered since the trial; (2) the movant used due diligence in attempting to find the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence is

such that it will probably produce a different result upon a new trial." (collecting cases)).[4]

## II. BACKGROUND

The Court presumes familiarity with the factual background of this matter, particularly that relating to the 2007 search and seizure of the micro-cassette tape, which is set forth at length in the Court's Ruling denying plaintiff's Renewed Motion for Judgment as a Matter of Law. See Doc. #293 at 4-15. Nevertheless, the Court briefly addresses the relevant background leading to the current motion for new trial.

On September 25, 2007, parole officer Ellison seized a micro-cassette tape and recorder in connection with the investigation of parole violations allegedly committed by plaintiff. Following that seizure, Ellison directed that the micro-cassette tape be delivered to the Connecticut State Lab for a forensic examination. Plaintiff testified about the alleged significance of this micro-cassette tape and its seizure. Specifically, plaintiff testified that the micro-

---

[4] Plaintiff seeks relief pursuant to Rules 59 and 60(b)(2) of the Federal Rules of Civil Procedure. These rules share the same standard for granting relief on the basis of newly discovered evidence. See Patel v. Lutheran Med. Ctr., Inc., 775 F. Supp. 592, 596 (E.D.N.Y. 1991) ("Whether moving on the basis of presentation of new evidence under Rule 59(e) or Rule 60(b)(2), the standard for 'newly discovered evidence' is the same." (citation omitted)).

cassette contained recorded conversations between him and Connecticut State Police Detectives Blanchette and Hoagland, in which the detectives threatened to frame plaintiff with the murder of April Pennington, of which plaintiff was ultimately convicted. See Doc. #266-2, Trial Transcript (hereinafter "Tr."), at 73:2-16[5]; see also id. at 75:13-77:7. Plaintiff also testified that just prior to the September 2007 search, he informed parole officer Bransford, then supervising plaintiff's supervised release, that plaintiff was in possession of this surreptitious recording, that plaintiff played a portion of the recording for parole officer Bransford, and that he denied parole officer Bransford's request to take possession of the tape. See id. Plaintiff therefore contends that the 2007 search of his residence was not to investigate plaintiff's alleged parole violations, but rather to confiscate evidence of plaintiff's conversations with Detectives Blanchette and Hoagland.

The issue of the whereabouts of the micro-cassette was first raised on January 11, 2011, when plaintiff, then proceeding pro se, filed a motion to compel production of, inter alia, "the CD or CDs that were produced from the micro-cassettes

[5] References to pages of the trial transcript relate to the Bates number on the lower right hand corner of each page of the transcript, reflected at docket entry number 266-2.

taken on 9/25/07[.]" Doc. #75 at 1.[6] In opposition to this motion, defendants' counsel responded, in pertinent part, that the micro-cassettes had "already been returned to plaintiff or his prior counsel[.]" Doc. #77 at 2; see also Doc. #77-1 at ¶5 (January 19, 2011, Affidavit of Defendants' Counsel re: Discovery: "[O]n December 13, 2010, I sent a copy of the CD made from the one micro-cassette sent to the CSP [abbreviation for Connecticut State Police] lab, to plaintiff's warden, so plaintiff could listen to the recording."); id. at ¶6 ("The CSP defendants have no other micro-cassette tapes, other than the one transcribed to CD and given to plaintiff's warden for plaintiff to listen."); id. at ¶9 ("I have also checked with the state police, and they have no other micro-cassettes."); id. at ¶10 ("I am advised by parole officers that if there were other micro-cassette tapes, they were returned to plaintiff's prior counsel of record, Attorney Koch. The parole division does not have any such tapes as described by plaintiff and there are no reports concerning what was on the tapes."). The chain of custody documents for the micro-cassette and recorder, however, reflect that on January 13, 2011, the Connecticut State Police provided the recorder and tape to parole officer Bransford, who

[6] The Connecticut State Lab created a CD copy of the micro-cassette tape, but only of side "A". See Pl. Exs. 36, 39.

then delivered these items to the Attorney General's Office on January 26, 2011 See Doc. #268-7.

Plaintiff filed a reply brief on February 24, 2011, contending: "The September 25, 2007, illegal warrantless search and unlawful entry by CSP and parole agents was independent of the remand, as it did not form the basis for the initial remand order, and plaintiff in no way challenges the remand just imply's that the remand was based on fabricated and misleading information used as subterfuge to recover the micro-cassette recordings." Doc. #81 at 2 (sic).[7] On February 28, 2011, Judge Thomas P. Smith denied plaintiff's motion to compel on the grounds that plaintiff failed to present any argument as to how the micro-cassette was relevant to this action, and that defendants had returned the micro-cassette to plaintiff's attorney and had provided plaintiff with a copy of the recording in their possession. See Doc. #82 at 9.

On August 10, 2012, plaintiff was appointed counsel. [Doc. #123]. Thereafter, on April 26, 2013, plaintiff, through counsel, filed a Motion to Reopen Discovery, along with a memorandum in support. [Doc. ##183, 184]. In pertinent part, plaintiff sought "disclosure of all items seized in the

[7] At trial, testimony of several witnesses confirmed that the Connecticut State Police did not enter plaintiff's home during the September 25, 2007, search, but instead were outside of plaintiff's residence to assist with the execution of the remand order.

September 25, 2007 search of [plaintiff's] home, including the microcassette recorder and tape, and all home surveillance tapes, that were seized on that date, but have never been returned to plaintiff." Doc. #184 at 4. Plaintiff made this request to clarify and protect the record regarding the whereabouts of certain items seized on September 25, 2007, from plaintiff's home. Defendants filed a response in opposition to this motion, in which defendants represented that they "do not have" the items sought, and again reiterated that the items were returned to plaintiff's prior counsel of record. See Doc. #190 at 9.

While the motion to reopen discovery was pending, on June 3, 2013, plaintiff filed a motion for clarification of the record, stating that plaintiff had since "learned additional information highlighting a significant ambiguity concerning the whereabouts of ... a microcassette recorder and tape." Doc. #196 at 1-2. Accordingly, plaintiff requested a hearing to "clarify and establish the chain of custody and location of these important items." Id. at 2. Plaintiff made the motion after learning that on February 8, 2011, the Attorney General's Office offered to produce the recorder and tape to state appellate counsel for plaintiff. See id. at 4. Plaintiff's motion concluded that it was "inconceivable ... that defendants have not maintained either (1) the microcassette recorder and tape in

the condition in which they were seized on September 25, 2007, or (2) chain-of-custody or evidence-flow sheets tracking their exact whereabouts." Id. at 5. On July 16, 2013, the Court issued a ruling denying plaintiff's motion for clarification and granting in part plaintiff's motion to reopen discovery. [Doc. #201]. As to plaintiff's request seeking the production of items seized during the September 25, 2007, search of plaintiff's home, including the subject micro-cassette recorder and tape, the Court denied plaintiff's motion as to this request because "this exact request was denied by Judge Smith in 2001[,]" and "[p]laintiff ha[d] pointed to no changed circumstances to compel a different conclusion." Doc. #201 at 3. The Court denied the motion for clarification in light of the "defendants' representation that the tape is no longer in the State's possession[.]" Id. at 4. Instead, the Court ordered that defendants "provide plaintiff with an affidavit from [Parole] Officer Bransford, attesting that all items seized in the September 25, 2007 search of plaintiff's home, including the microcassette recorder and tapes were returned to Leniart's lawyer." Id. In compliance with this order, on July 17, 2013, defendants filed the affidavit of parole officer Bransford, which stated, in pertinent part, that all of items seized were returned to plaintiff's then-attorney, there was no evidence flow sheet or chain of custody forms, and that none of the items

seized was then in the State's possession. See Doc. #202 at ¶¶5-7.

In February 2015, during the jury trial of this case, the existence and whereabouts of the micro-cassette were raised during the cross examination of parole officer Bransford.[8] See Tr. 324:14-18; 343:8-23; 345:8-22. On February 13, 2015, the jury rendered a verdict in favor of all defendants and against plaintiff. [Doc. #256]. On March 2, 2015, in connection with plaintiff's then-pending state court habeas proceedings, an Assistant Attorney General delivered the micro-cassette tape and recorder to the state court, along with a chain of custody report reflecting that the Attorney General's Office had been in possession of these items since January 26, 2011. See Doc. #268-1, Doc. #268-2.

On March 19, 2015, plaintiff filed the motion for new trial based on the discovery of the micro-cassette recorder and tape, and chain of custody report. Thereafter, the Court held a series of telephonic conferences while the tape was undergoing forensic examination in connection with the state habeas proceeding. The Court held plaintiff's motion in abeyance during this time.

[8] Bransford did not testify at trial that he returned the recorder and micro-cassette to Leniart's then-counsel. He recalled returning "some items" but not specifically the laptop, and said that the lawyer signed a receipt. Asked about the tape, he said, "I assume the tape was in there ..." but did not specifically recall receiving the tape or returning it.

Pursuant to the Court's order, and following a granted extension of time, on April 4, 2016, defendants filed a memorandum in opposition to plaintiff's motion for new trial. [Doc. #288]. Plaintiff filed a reply on May 2, 2016. [Doc. #291].

## III. DISCUSSION

Plaintiff moves the Court for a new trial on the basis of newly discovered evidence, namely the micro-cassette tape and recorder, and chain of custody report, which were produced to plaintiff shortly after judgment entered in this matter. See Doc. ##267, 268. Plaintiff contends that the absence of the micro-cassette tape at trial put him "at a critical disadvantage" as it essentially undermined plaintiff's theory that the 2007 search of his residence was a pretext to seize the micro-cassette tape, which allegedly contained recordings of the Connecticut State Police threatening to frame plaintiff for murder. See Doc. #268 at 10-11. More specifically, plaintiff contends: "Defendants thus used the tape's absence as a sword to gut Leniart's credibility on the central issue in this case. And by burying the tape before trial, they also shielded themselves from contradiction regarding the contents of the tape, their motives for conducting the search, and their handling of this critical evidence." Doc. #268 at 11. Accordingly, plaintiff contends that the "[d]efendants' use of the tape as both a sword

and shield was highly prejudical to Leniart's case and, for this reason alone, compels a new trial." Id.

Defendants oppose plaintiff's motion on the following grounds: (1) the motion is moot because the tape has been tested, and it is identical to the CD produced to plaintiff during discovery; (2) the micro-cassette tape is not newly discovered evidence; (3) offering the micro-cassette tape would not have changed the outcome of the trial; (4) the micro-cassette tape is cumulative evidence; (5) a harmless error analysis requires the Court to deny plaintiff's motion; (6) plaintiff's claims are barred by Heck v. Humphries; and (7) plaintiff's claims are barred by qualified immunity. See generally Doc. #288.

In reply, plaintiff reiterates that the micro-cassette tape, recorder and chain of custody report (hereinafter referred to as the "evidence") "are highly probative of the circumstances, including defendants' states of mind, surrounding the 2007 search and seizure, and constitute game-changing circumstantial evidence defendants previously hid from Leniart, this Court, and the Jury." Doc. #291. In furtherance of this contention, plaintiff submits: (1) that plaintiff's expert should be allowed to complete an examination of the tape; (2) the absence of the tape was pivotal at trial; (3) the evidence is newly discovered and would change the outcome; (4) the

evidence is not merely cumulative or impeaching; (5) the error is not harmless; (6) Heck does not apply; and (7) the defendants are not entitled to qualified immunity. See generally Doc. #291.

The parties initially dispute whether the evidence is "newly discovered." However, the Court need not reach that issue as plaintiff has failed to establish that the evidence would probably produce a different result upon a new trial, particularly where, as here, the resolution of this matter largely depended on the jury's credibility assessments of the witnesses. "In considering the effect newly discovered evidence might have on the outcome of a trial, the proper inquiry is whether the evidence makes a prima facie showing that a different result should have been reached." Chang, 150 F.R.D. at 461 (citation and internal quotation marks omitted). Plaintiff must make "[m]ore than a showing of the potential significance of the new evidence ... to justify the granting of a new trial after judgment has become final." Id. (citation omitted) (alterations added).

As an initial matter, the Court notes that the jury returned a verdict in favor of each defendant against plaintiff. In short, plaintiff did not prevail on a single issue before the jury. The micro-cassette tape at issue here primarily impacts the jury's verdict as to plaintiff's claims against defendant Ellison for the 2007 search of plaintiff's residence and seizure

of the micro-cassette tape. Plaintiff offered only his testimony in support of this claim. Plaintiff's primary contention is that the absence of the evidence greatly undermined plaintiff's theory of the case with respect to the 2007 search – namely that

> the 2007 search of the audio tape was orchestrated by the defendants, not based on a reasonable suspicion linking it to alleged parole violations, but in order to confiscate and bury this exculpatory evidence. Ellison, however, testified that his only motive for searching Leniart's home was to investigate suspected parole violations. When defendants bolstered that testimony by introducing Bransford's testimony that he had returned the microcassette tape to Leniart's prior counsel, they planted a question in the jury's mind that was fatal to Leniart's case: why, if this tape is so crucial to Leniart's case, and if it is in his possession, did he not play it in open court?

Doc. #268 at 11. This contention, however does not entirely comport with the evidence offered at trial.

First, plaintiff fails to point to a scintilla of evidence suggesting that defendant Ellison personally knew of the contents of the micro-cassette tape. Because plaintiff's claim as to the 2007 search is only against defendant Ellison, then it was only his state of mind to have been considered in determining whether his actions were reasonably related to a reasonable suspicion that a violation of parole had been or was being committed. Although plaintiff allegedly told defendant Bransford about the contents of the micro-cassette tape, there was no testimony elicited that Bransford ever told Ellison about the existence or contents of that tape. Because Ellison

admittedly searched plaintiff's residence in 2007 and seized the laptop bag, in which the micro-cassette tape was later discovered, plaintiff's theory of the 2007 search is greatly undermined by the lack of proof that Ellison knew of the micro-cassette tape's existence or alleged contents, as described by Leniart.

Second, the resolution of this matter largely turned on the jury's credibility assessments of the witnesses. Plaintiff appears to admit as much in his briefing: "Defendants thus used the tape's absence as a sword to gut Leniart's credibility on the central issue in this case." Doc. #268 at 11; see also Doc. #291 at 7 ("Having been repeatedly misled about and blocked from the tape and related evidence by defendants before the trial, however, Leniart was in no position at the trial to rebut this dispositive, highly prejudicial, and entirely false testimony by Bransford."). Although when considering a motion for new trial the Court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner[,]" Second Circuit precedent "counsels that trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility, and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the

judge disagrees with the jury." Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012) (internal citations and quotation marks omitted). In that regard, "where the resolution of the issues depended on an assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." Id. (citation and alterations omitted).

Here, it was not just the absence of the micro-cassette tape which informed the jury's credibility assessments of plaintiff and defendant Bransford. As noted above, the only testimony provided in support of plaintiff's claims was his own. In sharp contrast, defendants offered the testimony of several parole and police officers, each of whose testimony was largely consistent with the others, and contradicted much of that provided by plaintiff. Additionally, the jury heard evidence of plaintiff's multiple felony convictions, and that he was then serving a life term of imprisonment for murder.

As to the credibility and testimony of parole officer Bransford, although the Court views critically the substance of his testimony in light of this newly available evidence, the Court "is also not persuaded that the outcome of this trial would have been any different had [parole officer Bransford] told the truth about [the custody of the micro-cassette tape]," Lorusso, 2006 WL 473729, at *14, in light of the other evidence

received supporting Ellison's reasonable suspicion that plaintiff had violated the conditions of his special parole. See generally Doc. #293, Ruling on Plaintiff's Renewed Motion for Judgment as a Matter of Law (discussing the evidence supporting a reasonable juror's finding in favor of defendant Ellison as to the 2007 search). Moreover, as will be discussed below, the forensic examination of the micro-cassette tape did not reveal the surreptitious recording described by plaintiff.

As to the contention that the evidence could have been used to contradict the testimony of defendant Bransford, at best it impeaches it "and consequently cannot support a new trial motion." Chang, 150 F.R.D. at 461 (citation omitted). Even if consistent with plaintiff's testimony, the Court is skeptical that the evidence would have changed the outcome at a new trial as to the 2007 search. Although consistent evidence may have raised questions about Bransford's credibility,[9] the defendants also produced the testimony of several other parole officers involved in the 2007 search. Additionally, plaintiff fails to deal with the fact that his claim for the 2007 search was made only against defendant Ellison. Accordingly, to the extent the evidence might undermine the testimony of Bransford, there is no

[9] Bransford was asked obliquely at trial about Leniart's claim that Leniart told Bransford about the recording and he denied it. Tr. 343:8-11.

indication that it would have impugned the credibility of Ellison or any of the other testifying parole officers.

Third, as referenced above, when examined, the micro-cassette tape did not contain the threats described by plaintiff. Although plaintiff requests that his expert retained in connection with the state court habeas matter be permitted to continue his examination of the tape prior to adjudication of this motion, the Court is not persuaded that expert testimony as to the tape's contents, or lack thereof, would produce a different result upon a new trial. Presumably, plaintiff would offer the testimony of this expert to further expound upon the contents of his original report identifying "two areas of concern," and potentially about whether the micro-cassette tape was an altered copy of the original. See Doc. #291 at 3-4. If plaintiff were to offer such testimony, then undoubtedly defendants would proffer a rebuttal expert in addition to the other ample evidence already admitted which undermined plaintiff's claims with respect to the 2007 search. On balance, the Court is not persuaded that the addition of likely conflicting expert testimony about the condition of the tape would change the result upon a new trial, particularly as the claim is only made against defendant Ellison.

Last, plaintiff contends that "[r]egardless of the contents of the tape, the new evidence establishes that defendants

repeatedly and under oath misrepresented the whereabouts of the tape, broke the seal that the lab had affixed to protect the evidence, and damaged the recorder so that it could no longer be used, would compel a different verdict." Doc. #291 at 7. Again, although the Court does not take lightly the allegation that defendant Bransford perjured himself and submitted a false affidavit, plaintiff's argument incorrectly attributes this malfeasance to all of the "defendants," when in fact, it appears that any alleged misconduct can only be attributed to Bransford. This is significant as plaintiff's claim with respect to the 2007 search was made solely against defendant Ellison, who has not been directly or indirectly implicated in any wrongdoing.

Simply, plaintiff has not met his onerous burden of establishing that the new evidence would have changed the outcome of this case – a case in which the jury found against plaintiff on every claim against each defendant.

In light of this finding, the Court need not reach the parties' other remaining arguments.

**IV. CONCLUSION**

Accordingly, for the reasons articulated above, the Court **DENIES** plaintiff's Motion for a New Trial. [**Doc. #267**].

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge on April 23, 2013 [Doc. #44], with appeal to the Court of Appeals. Fed. R.

Civ. P. 73(b)-(c).

ENTERED at Bridgeport, Connecticut this 30th day of March, 2017.

/s/
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE